Joyce C. KADING, Plaintiff-Appellee,

v.

Gerald R. KADING,
Defendant-Appellant.

No. 83CA0721.

Colorado Court of Appeals,
Div. IV.

May 24, 1984.

James M. DeRose, Denver, for plaintiff-appellee.

Robert D. Hawthorne, P.C., Robert D. Hawthorne, Limon, for defendant-appellant.

LEE [*], Justice.

Defendant, Gerald R. Kading, appeals from the entry of judgment on two separate jury verdicts rendered in favor of plaintiff, Joyce C. Kading. We affirm.

Three separate "causes of action" asserted by plaintiff were submitted to the jury. One such cause was a wage claim asserted against Doyle House Moving and Wrecking Co., Inc. (Doyle). A second cause, asserted against defendant Kading, was a claim for conversion of various items of personal property alleged to have had a value of $1,250. A third cause, also against defendant Kading, sought recovery of the value of a one-half interest in certain real estate. Plaintiff alleged that she had quitclaimed her interest in the property to defendant Kading under duress or undue influence.

The trial court provided the jury with three general verdict forms. A form labeled "Verdict, First Cause of Action" was provided for plaintiff's claim against defendant Doyle. The two remaining forms, provided in connection with the claims against defendant Kading, were identical to each other, except that one form was labeled "Verdict, Second Cause of Action" and the other was labeled "Verdict, Third Cause of Action."

With the exception of instruction number one, the statement-of-the-case instruction,

---

[*] Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

the jury was not separately instructed as to which claim against defendant Kading was the "Second Cause of Action" and which claim was the "Third Cause of Action." However, the jury was instructed that it was required to compute certain damages, first as to the personal property if it found in favor of plaintiff "on her second cause of action ... for property kept and taken by the defendant," and second, that it was to compute certain damages as to the real property transferred if it found in favor of plaintiff "on her third cause of action ... for the signing of the quitclaim deed."

When the jury returned to the courtroom after deliberation, the trial court inquired of the jurors as a whole whether they had reached their verdicts. Upon receiving an affirmative response from the jury foreman, the court read into the record the contents of the three verdict forms, each of which was noted by the court to have been signed by all six jurors. The verdict labeled "First Cause of Action" was for defendant Doyle and against plaintiff. The verdict labeled "Second Cause of Action" was for the plaintiff and against defendant Kading in the amount of $11,500. The verdict labeled "Third Cause of Action" was for the plaintiff and against defendant Kading in the amount of $250.

Immediately after the verdicts were read, the following dialogue took place:

"THE COURT: Now, I'm wondering if we got the right verdicts on the right forms?

MR. HAWTHORNE [Defense Counsel]: No, your Honor, there should—the last verdict should be—the third complaint should be the eleven thousand.

THE COURT: On the verdict you meant that on the quitclaim deed claim?

THE FOREMAN: Yes.

THE COURT: The $250 you meant on the personal property?

THE FOREMAN: Personal property.

THE COURT: I am going to ask the jurors to return to the jury room and correct their verdicts, if they are incorrect."

After obtaining blank copies of the verdict forms, the court further instructed the jury to scratch out the original forms and to fill out new ones, "if any of the verdicts need to be corrected" and to return all of the forms to the court.

When the jury returned for the second time, the verdict for the first cause of action was unchanged. However, the dollar amount in the original verdict form for the second cause of action had been changed by the jury from $11,500 to $250, and that for the third cause of action had been changed from $250 to $11,500. In addition, new forms for the second and third causes, reflecting the changed amounts, had been filled out, and were signed by all jurors. Upon request of counsel for plaintiff, the jurors were then polled. Each juror responded affirmatively to the poll. The corrected verdicts were then received by the court and judgment was entered thereon.

The jury was then excused. Counsel for the defendants made a record of his objections and moved for a mistrial. In response to the motion, the court stated:

"All right, the motion for mistrial will be denied. It appeared obvious to the court immediately upon reading the verdicts that they had recorded their verdicts on the wrong form for the second and third claims, and the jurors were also at the same time trying to get my attention to tell me that."

In this appeal, defendant contends that the procedure followed by the trial court in receiving the original verdicts and allowing correction thereof was erroneous. Defendant initially argues that by reading the original verdicts without first calling the names of the jurors and separately asking each juror whether the juror has agreed upon the verdict, the court failed to adhere to the mandatory requirements of C.R.C.P. 47(q). We do not agree.

Although C.R.C.P. 47(q) requires that the names of the jurors be stated and that inquiry be made whether the jury has reached a verdict, the rule does not require that the inquiry be made of each juror

individually, nor does it mandate that an individual response from each be received. Rather, the rule specifies only that inquiry as to agreement on the verdict be made of "the jurors" collectively. Individual polling of the jurors is required under the rule only when requested by a party. *See also Kohn v. Kennedy,* 6 Colo.App. 388, 41 P. 510 (1895).

■ We do not regard the failure of the court to call the roll of the jury when it was first returned to the courtroom to be reversible error since all six jurors had signed the verdict forms. Moreover, each juror was polled as to his assent to the corrected verdicts before they were received by the court and judgment was entered thereon. Thus, this departure from C.R.C.P. 47(q) was harmless. *See* C.R.C.P. 61; *Sowder v. Inhelder,* 119 Colo. 196, 201 P.2d 533 (1948).

Defendant further argues that when the court inquired as to whether the jury had used the proper verdict forms, it improperly inquired into and considered juror testimony concerning the mental processes of the jury, and thus violated CRE 606(b). Again, we disagree.

■ CRE 606(b) codifies a previously existing common law exclusionary rule that is intended to protect the integrity and finality of jury verdicts and to guard against harassment or coercion of jurors following announcement of their verdict. *See Santilli v. Pueblo,* 184 Colo. 432, 521 P.2d 170 (1974); *Morris v. Redak,* 124 Colo. 27, 234 P.2d 908 (1951). Accordingly, in the context of an inquiry into the validity of a verdict, and with certain exceptions not applicable here, CRE 606(b) precludes admission or consideration of juror testimony that concerns any matter or statement occurring during the course of the jury's deliberations, or that concerns the mental processes of the jurors in arriving at a verdict. *See Rome v. Gaffrey,* 654 P.2d 333 (Colo.App.1982). However, and consistent with its underlying purpose, the rule does not bar a juror statement that because of mistake or oversight the announced verdict is not the verdict upon which agreement had been reached. *See J. Weinstein & M. Berger, Weinstein's Evidence* ¶ 606[4] at 606–32 (1982); *Young v. United States,* 163 F.2d 187 (10th Cir.), *cert. denied,* 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355 (1947).

■ Here, the court's inquiry and the jury foreman's statements concerned a possible clerical mistake in filling out the dollar amounts of the verdict forms which was immediately perceived by both the court and defendant Kading's counsel. Contrary to defendant's assertion, the inquiry was not an attempt to examine, nor did it reveal, any aspect of the mental processes by which the jurors arrived at their verdicts in the jury room. Instead, it was made in an effort to establish what in fact these verdicts were. The statements adduced were therefore not precluded by CRE 606(b).

■ We also reject defendant's assertion that the trial court erred by considering only the statements of the jury foreman as to whether the correct forms had been used, instead of ascertaining the views of each juror on the matter. The jury foreman by instruction of the court is the presiding officer of the jury and by custom is the spokesman for the jury as a whole. *See Colo.J.I.* 40:17 (2d ed. 1980). *See* 75 *Am.Jur.2d Trials* § 932. Moreover, no objection to the views expressed by the foreman was made by any other juror. The jury was instructed to correct the verdicts *only* if they were incorrect, and each juror was polled and expressed his individual assent to the verdicts after they were corrected.

On the basis of this record, we are convinced that the court's reliance on the foreman's statements resulted in no prejudice to defendant and that the corrected verdicts, rather than the originals, were the intended verdicts of each member of the jury. Those verdicts must therefore be given effect. *See Tyler v. District Court,* 200 Colo. 254, 613 P.2d 899 (1980).

■ We also disagree with defendant's argument that the trial court had no au-

thority under C.R.C.P. 47(r) to allow the jury to correct its original verdicts. An incorrect method of expressing an intended verdict amounts to a mistake in the verdict that may properly be corrected under C.R. C.P. 47(r). *See Blain v. Yockey*, 117 Colo. 29, 184 P.2d 1015 (1947).

Judgment affirmed.

ENOCH, C.J., and COYTE *, J., concur.