Lauren E. ALDRICH and J. Elaine Aldrich, Petitioners,

v.

The DISTRICT COURT OF the EIGH-TEENTH JUDICIAL DISTRICT, In and For the COUNTY OF ARAPAHOE; and the Honorable Joyce S. Steinhardt, Respondents.

No. 85SA291.

Supreme Court of Colorado,
En Banc.

March 10, 1986.

Gorsuch, Kirgis, Campbell, Walker & Grover, Malcolm M. Murray, Denver, for petitioners.

Mehaffy, Rider, Windholz & Wilson, James A. Windholz, Boulder, for respondents.

ERICKSON, Justice.

This original proceeding arises out of an eminent domain proceeding in which the Littleton Riverfront Authority acquired title to property owned by the petitioners, Lauren and Elaine Aldrich. Petitioners contend that the respondent district court abused its discretion in granting Littleton's motion for a new trial. We issued a rule to show cause and now make the rule absolute.

## I.

The Littleton Riverfront Authority (Littleton) initiated eminent domain proceedings in the respondent district court to acquire property owned by the petitioners. The property included a motorcycle sales and repair business which petitioners had operated for many years. The district court appointed a commission to determine the preliminary compensation to be awarded petitioners for their property.[1] The commission awarded petitioners $475,000, and Littleton deposited that amount with the court pursuant to section 38–7–103(2), 16A C.R.S. (1982). The district court entered an order vesting title in Littleton and authorizing Littleton to take possession of the property.

Thereafter, the district court appointed a new commission to determine the final award for petitioners' property. After a three-day hearing, the commission returned a certificate of ascertainment and assessment setting the fair market value of the property at $623,700. The district court approved the certificate of ascertainment and assessment and entered judgment for petitioners in the amount of $623,700.

Littleton filed a motion for a new trial alleging that the commissioners relied on improper considerations and failed to follow the district court's instructions in determining the value of petitioners' property. In support of the motion, Littleton submitted an affidavit by its attorney, James Windholz. Windholz stated that he spoke with each of the commissioners following the hearing and learned that they failed to deduct depreciation from the cost of the building on the property. Windholz also said that the commissioners considered the years of hard work the petitioners had devoted to their business. According to Windholz, the commissioners were also concerned that petitioners may not have received any interest or payment from Little-

ton between the time Littleton obtained possession of the property and the date of the final award. Finally, Windholz stated that the commissioners viewed properties comparable to the petitioners' property, contrary to the court's instructions.

Petitioners moved to strike Windholz' affidavit and to deny the motion for a new trial. Petitioners asserted that the affidavit contained only hearsay and was therefore insufficient to support the motion for a new trial. A hearing on the motion by telephone conference was set and Littleton subpoenaed the commissioners, who were present to testify on the date of the hearing. However, the hearing was never held, the district court electing to proceed on the basis of the pleadings. The court ruled that the Windholz' affidavit was a sufficient basis for finding the award excessive and granted the motion for a new trial. Petitioners then instituted this original proceeding seeking a writ of prohibition directing the district court to strike Windholz' affidavit and to deny Littleton's motion for a new trial.

## II.

Petitioners challenge the sufficiency of Windholz' affidavit as a basis for granting Littleton's motion for a new trial on two grounds. First, petitioners assert that the affidavit is based entirely on hearsay and is therefore insufficient to support a motion for a new trial under C.R.C.P. 59. Second, petitioners contend that the affidavit deals exclusively with the thought processes of the commissioners in determining the value of petitioners' property. Such evidence, petitioners maintain, may not be relied upon to impeach the commission's certificate of ascertainment and assessment. In our view, the affidavit was an insufficient basis for the district court's decision to grant a new trial.

1. Section 38–7–101, 16A C.R.S. (1982), provides that in eminent domain proceedings initiated by an urban renewal authority, the authority may file a motion that it be vested with title immediately or at some specified later date. If the motion is granted, the court shall appoint a commission of three freeholders to assess compensation. § 38–7–102(4). The assessment is only a preliminary finding, section 38–7–102(5), and may not be used as evidence in further proceedings to determine the final compensation for the property. § 38–7–102(6).

## A.

The Colorado Rules of Civil Procedure are applicable to eminent domain proceedings. *Stalford v. Board of County Commissioners*, 128 Colo. 441, 263 P.2d 436 (1953). Under C.R.C.P. 59(d), a motion for a new trial based on irregularity in the proceedings, misconduct of the jury, accident or surprise, or newly discovered evidence must be supported by an affidavit. Here, the motion for a new trial alleged irregularities in the commission's investigation and cited misconduct by the commissioners. Therefore, Littleton was required to file an affidavit in support of its motion. The question is whether the affidavit submitted by Littleton—signed by its attorney and containing only hearsay—was adequate for purposes of rule 59(d).

Our resolution of this issue is predicated upon the purpose of a supporting affidavit under C.R.C.P. 59. In *Cawthra v. City of Greeley*, 154 Colo. 483, 486, 391 P.2d 876, 877 (1964), we said:

It is a most salutary rule to require a supporting affidavit where there is an accusation of misconduct on the part of a juror in a motion for a new trial, the movant thereby proving his good faith and, by particularizing, demonstrating that his allegation of juror misconduct—a most serious charge—is based on knowledge, not suspicion or mere hope.

*See also People's Natural Gas v. Public Utilities Commission*, 626 P.2d 159 (Colo. 1981). In *Cawthra*, the motion for a new trial was not supported by an affidavit, and we held that the motion should have been summarily denied.

We elaborated on the requirement of a supporting affidavit in *Hansen v. Dillon*, 156 Colo. 396, 400 P.2d 201 (1965). There, the trial court refused to consider the affidavit of the movant's attorney concerning discussions between the attorney and several jurors after the conclusion of the trial. We affirmed the trial court, holding that the requirement of a supporting affidavit

presupposes that the affidavit be from one having firsthand information rather than from a person possessing only hearsay. Such is not true in the instant case. There is no affidavit in this record of any juror who served in the trial of this matter, nor is there any claim that these jurors refused to give such. Rather we have only the affidavit of losing counsel, and the affidavit itself is largely hearsay and chock-full of conclusions.

*Id.* at 401, 400 P.2d at 204. Petitioners contend that under *Hansen*, the district court should have granted their motion to strike the affidavit of Littleton's attorney. We disagree.

*Hansen* is distinguishable from the facts of this case. Although the affidavit of Littleton's attorney was based on his conversations with the commissioners, the affidavit contains numerous factual allegations and is not conclusory in nature. The affidavit satisfies the policy of *Cawthra* by detailing the information acquired by Littleton's attorney in conversations with the commissioners. The nature of the information is such that Littleton acted upon a basis of knowledge, not merely suspicion or hope, in filing its motion for a new trial. Furthermore, respondents have alleged that two of the commissioners refused to execute affidavits and the third could not be contacted. By contrast, in *Hansen* there was no claim that the jurors refused to give affidavits. Accordingly, we hold that the district court did not abuse its discretion in refusing to strike the affidavit of Littleton's attorney which supported the motion for a new trial. However, we disagree with the district court that the affidavit was a sufficient basis for granting Littleton's motion for a new trial.

## B.

The verdict of a jury is not subject to impeachment on grounds which require the court to inquire into the jury's mental processes in reaching its verdict. *Santilli v. Pueblo*, 184 Colo. 432, 521 P.2d 170 (1974); *Kading v. Kading*, 683 P.2d 373 (Colo.App.1984). The rationale underlying the rule is to protect the integrity and finality of the jury's verdict and to prevent

harassment or coercion of the jurors after they have announced their verdict. *Santilli*, 184 Colo. at 432, 521 P.2d at 170. The presumption against impeachment of verdicts, deeply rooted in the common law, is embodied in rule 606(b) of the Colorado Rules of Evidence. CRE 606(b) provides:

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

*See Blades v. DaFoe*, 704 P.2d 317, 322 (Colo.1985) ("[I]t is the policy of the law to look with disfavor on any attempt to invade the jury's internal processes of decision making in order to obtain evidence necessary to impeach verdicts, except in relatively rare cases.").

■■■A commission of freeholders appointed to determine the value of property in eminent domain proceedings is not a jury. *See Board of County Commissioners v. Vail Associates*, 171 Colo. 381, 468 P.2d 842 (1970); *Poudre School District v. Stark*, 35 Colo.App. 363, 536 P.2d 832 (1975), *rev'd on other grounds*, 192 Colo. 396, 560 P.2d 77 (1977). However, we think the policies militating against impeachment of jury verdicts warrant the application of the principles contained in CRE 606(b) to the attempted impeachment of a certificate of ascertainment and assessment.

■■■ The owner of property subject to condemnation in eminent domain proceedings may request a jury of freeholders to determine just compensation. § 38–1–106, 16A C.R.S. (1982). If the owner does not request a jury, the court is required by statute to appoint a board of commissioners to assess the value of the property. § 38–1–105. The procedure by which compensation is determined varies significantly depending upon whether a jury or a commission is used. *Compare* § 38–1–105 *with* § 38–1–106. However, the function of the two bodies is identical. Both determine just compensation after hearing the evidence presented by the parties and receiving instructions by the court on the applicable law. In our view, the commission's certificate of ascertainment and assessment should be accorded the same degree of inviolability accorded to the verdict of a jury. Commissioners require the same protection against harassment and coercion as members of a jury. Therefore, we hold that the restrictions on the impeachment of jury verdicts set forth in CRE 606(b) are applicable to the impeachment of a certificate of ascertainment and assessment in eminent domain proceedings. *See Poudre School District v. Stark*, 35 Colo.App. at 363, 536 P.2d at 832 (rule requiring that grounds of impeachment of jury verdict be evidenced by juror's own account under oath applies to impeachment of certificate of ascertainment and assessment).

■■■ The district court made no findings on the issue of whether the statements attributed to the commissioners in the affidavit of Littleton's attorney related to their thought processes in determining the value of petitioners' property. Our review of the affidavit leads us to conclude that all but one of the subjects discussed between Windholz and the commissioners involved the mental processes of the commissioners. The only portion of the affidavit that does not relate to the thought processes of the commissioners is the statement that the commissioners viewed properties comparable to the petitioners' property, even though they were instructed by the court not to do so. We have previously stated

that it is "basic that the commissioners confine their evaluation of market value to the evidence before them." *Stark v. Poudre School District*, 192 Colo. 396, 399, 560 P.2d 77, 80 (1977). However, we are unwilling, on the basis of the record before us, to decide whether the alleged viewing of other properties constituted misconduct sufficient to warrant a new trial. Accordingly, we remand the case to the district court with instructions to conduct a hearing on Littleton's motion for a new trial.

 At the hearing, Littleton shall have the burden of establishing that the alleged misconduct of the commissioners had the capacity to influence their valuation of petitioners' property. *Butters v. Dee Wann*, 147 Colo. 352, 363 P.2d 494 (1961); *Pueblo County Department of Social Services v. G.G.*, 679 P.2d 118 (Colo.App.1984).[2] In accordance with *Butters*, Littleton need not prove that the alleged misconduct actually influenced the commission's award, but only that it had the capacity to do so. If Littleton fails to meet its burden, the motion for a new trial should be denied.

The remaining issues are without merit and need not be addressed. Accordingly, the rule to show cause is made absolute.

ROVIRA, J., does not participate.

---

**2.** In *Butters*, we adopted the test set forth in *Panko v. Flintkote Co.*, 7 N.J. 55, 80 A.2d 302, 305–06 (1951):

It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be "imperatively required to secure verdicts based on proofs taken openly at the trial, free from all danger by extraneous influences."

(Citations omitted). *See Butters v. Dee Wan*, 147 Colo. at 357, 363 P.2d at 497.