**Jeffrey A. DAVIS, Plaintiff–Appellant and Cross–Appellee,**

v.

**Joel LIRA, Defendant–Appellee and Cross–Appellant.**

**Nos. 89CA1240, 89CA1474.**

Colorado Court of Appeals, Div. II.

Jan. 31, 1991.

Rehearing Denied March 28, 1991.

Certiorari Granted Sept. 16, 1991.

defendant and the other driver, Edgar Gunn, emerged and had a fist fight.

Following the fight, Gunn and David Gutierrez (a passenger in Gunn's car) took the keys from defendant's vehicle and left. Defendant abandoned his truck in the middle of the highway and went to a bar before going home to sleep. Soon thereafter, plaintiff's car struck defendant's abandoned vehicle and plaintiff sustained numerous injuries.

In this action in which only Lira was present as a defendant, the jury awarded $87,300 in actual damages and $87,300 in exemplary damages. The jury allocated the percentage negligence of the various participants as follows: (1) Lira—50 percent; (2) Gunn—15 percent; (3) Gutierrez—23 percent; and (4) Davis—12 percent. The court reduced the compensatory and exemplary damages award so that they reflected the percentage negligence of plaintiff and the other nonparties (named as defendants by plaintiff but never joined in suit).

Fogel, Keating & Wagner, P.C., Alan C. Shafner, Denver, for plaintiff-appellant and cross-appellee.

Lapin and Herrick–Stare, P.C., James B. Lapin, Randall S. Herrick–Stare, Stephen M. Johnson, Julian M. Izbiky, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge DUBOFSKY.

Plaintiff, Jeffrey A. Davis, appeals the trial court's reduction of a jury verdict awarding exemplary damages against defendant, Joel Lira. Defendant cross-appeals the judgment entered on a jury verdict in favor of plaintiff. We affirm the judgment entered on the jury verdict in favor of plaintiff but reverse the reduction of the exemplary damages award.

In the early morning of January 3, 1988, defendant, while driving his truck on Interstate 25 in Denver, became engaged in a game of "road warriors" with another vehicle. Eventually, the two vehicles stopped in the travel lanes of the highway, and

### I.

Plaintiff argues that the trial court erred in reducing the jury award of $87,300 in exemplary damages by the percentage of negligence attributed to plaintiff and others. We agree.

The exemplary damages statute, amended in 1986, states that the "amount of such reasonable exemplary damages shall not exceed an award which is *equal to the amount of the actual damages awarded to the injured party.*" Section 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A) (emphasis added). Lira argues that the statutory phrase, "amount of the actual damages awarded," refers to the damages awarded in the judgment after application of the comparative negligence statute, and not to the total amount of damages actually incurred by plaintiff. Under such construction, the trial court's reduction would be proper, but we conclude that such construction is inconsistent with the policy underlying an award of exemplary damages and with the legislative intent reflected in the statute.

■ The underlying purpose of punitive damages is to punish a wrongdoer, not to compensate a victim based on concepts of fault. A. Palmer & S. Flanagan, *Comparative Negligence Manual* § 1.310 at 63 (Rev. ed. 1986). Thus, the majority rule is that exemplary damages are not reduced to reflect the plaintiff's or other parties' comparative negligence. Under the exemplary damages statute applicable prior to the 1986 amendment, our courts also concluded that punitive damages should not be reduced by a plaintiff's negligence. *See Jacobs v. Commonwealth Highland Theatres*, 738 P.2d 6 (Colo.App.1986); *Carey v. After the Gold Rush*, 715 P.2d 803 (Colo. App.1986).

Colorado first enacted an exemplary damages statute in 1889. In 1986, the above-quoted amendment was passed which for the first time restricted exemplary damages to a one-to-one relationship to actual damages. *Cf. Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984) (ten-to-one ratio of exemplary to compensatory damages upheld as reasonable). Thus, the issue presented is the intent of the General Assembly in enacting the amendment.

Our analysis of the legislative history of the amendment leads us to conclude that the legislative intent was not to alter prior appellate decisions that affirmed awards of damages without a reduction for the plaintiff's or other parties' negligence. *See* Hearings on H.B. 1197 before the House State Affairs Committee, 55th General Assembly, 2nd Session (Feb. 4, 1986); *Rauschenberger v. Radetsky*, 745 P.2d 640 (Colo.1987); 1A N. Singer, *Sutherland Statutory Construction* § 22.30 (4th ed. 1985).

The legislative history indicates that there was debate over an exemplary damages award in relationship to a nominal damages award with a proposed cap of $25,000 for exemplary damages. *See* Hearings on H.B. 1197 before the House State Affairs Committee, 55th General Assembly, 2nd Session (Feb. 4, 1986) (statements of Representative Skaggs). Thus, the term "actual damages awarded" contemplates more than damages resulting from plaintiff's actual injury. *See Carey v. After the Gold Rush, supra.*

■ In *White v. Hansen*, 813 P.2d 750 (Colo.App.1990), this court held that under the previous exemplary damages statute, the term "actual damages awarded" meant the total damages assessed or determined by the jury and not those that were actually received by the plaintiff. In reaching this conclusion, the *Hansen* court relied on (1) the plain language of the statute; (2) the decisions holding that exemplary damages are not diminished by the negligence of the parties; and (3) interpretations of the exemplary damages statute which had previously liberally interpreted the concept of an actual award of damages. We agree with the reasoning and conclusion of *Hansen* that the term "actual damages awarded," as relevant here, means those total compensatory damages awarded to plaintiff prior to adjustment affecting reductions for the negligence of plaintiff. *See Bodah v. Montgomery Ward & Co.*, 724 P.2d 102 (Colo.App.1986).

■ Here, one verdict form was directed to determining the actual compensatory damages of plaintiff and the percentage negligence of plaintiff, defendant, and the nonparties. A second jury verdict form was directed only to the exemplary damages to be awarded against defendant Lira. Since the exemplary damages verdict form was only applicable to Lira and the jury determined that he was guilty of "wanton and reckless conduct," we conclude there is no basis to discount the exemplary award. Thus, the trial court's ruling to the contrary cannot stand.

## II.

Defendant argues on cross-appeal that the trial court erred in refusing to grant a new trial based on juror misconduct. We disagree.

■ Based on an affidavit from the jury foreperson, defendant contends that the jury improperly reached a quotient verdict because the jurors followed an antecedent agreement to determine plaintiff's damages separately, to then total them collec-

tively, and finally to divide by the number of jurors to determine plaintiff's damage award. He argues that such a procedure represents a quotient verdict prohibited by Colorado case law, specifically, *Edwards v. Quackenbush*, 112 Colo. 337, 149 P.2d 809 (1944), and the cases cited therein.

Plaintiff argues that because evidence of a quotient verdict relates to the juror's thought processes during jury deliberation, such evidence is inadmissible under CRE 606(b). We agree with plaintiff.

In *Edwards v. Quackenbush, supra*, the court admitted evidence of a quotient verdict in order to impeach the verdict. However, since *Edwards* and the cases it relied on were decided prior to the adoption of the Colorado Rules of Evidence, *Edwards* does not control our interpretation of CRE 606(b). *See People v. Montoya*, 753 P.2d 729 (Colo.1988).

The language of CRE 606(b) is identical to Fed.R.Evid. 606(b), and since the Colorado Rules of Evidence are largely derived from the Federal Rules of Evidence, the legislative history and rationale behind the adoption of the Federal Rules of Evidence is relevant in interpreting the Colorado Rules of Evidence.

The question whether Fed.R.Evid. 606(b) permits the impeachment of a quotient verdict was specifically debated in Congress. The record of that debate indicates that Congress intended to prohibit impeachment of a verdict because it was a "quotient verdict." *See Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980 (5th Cir.1983); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] (1990); *see also Scogin v. Century Fitness, Inc.*, 780 F.2d 1316 (8th Cir.1985) (disallowing impeachment of jury verdict as being quotient verdict on basis it violated Fed.R.Evid. 606(b)). Historically, the federal courts did not permit impeachment of quotient verdicts. *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915).

When Congress was considering Fed.R.Evid. 606(b) the American Bar Association's Committee on Minimum Standards indicated that an explicit exception to Rule 606(b) was necessary before a party could impeach a quotient verdict or a verdict by lot. The rejection of the ABA's amendment by Congress is additional evidence that Rule 606(b) does not permit impeachment of quotient verdicts. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] (1990); The Criminal Bar Association Project of Minimum Standards for Criminal Justice—Trial by Jury § 5.7 (1968).

We consider this analysis applicable to the Colorado rule and, thus, conclude that the trial court did not err in denying a new trial based on defendant's claim of a quotient verdict.

### III.

Defendant next argues that the trial court erred in failing to grant a new trial based on juror mistake. We disagree.

Defendant submitted an affidavit in which the jury foreperson stated:

> "We then decided on an amount of damages to punish defendant Joel Lira. Only one juror felt damages to punish Joel Lira were appropriate. That juror felt approximately $10,000 should be awarded. We decided on a lower amount. This lower amount was added to the amount of compensatory damages. The total we decided for both compensatory damages and damages to punish Joel Lira was $87,300.00.

> "It was not my intention, nor was it the intention of anyone on the jury, to award $87,300.00 for compensatory damages and an *additional* $87,300.00 for damages to punish Joel Lira. Our intention was to fix the total damages at $87,-300.00." (emphasis in original)

Defendant argues that CRE 606(b) does not preclude the admission of a juror's statement that because of mistake, inadvertence, or oversight the jury verdict announced was not the verdict upon which an agreement had been reached. *Kading v. Kading*, 683 P.2d 373 (Colo.App.1984); *see* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] (1990). Defendant contends that this affidavit is not an attempt to examine or reveal the mental processes

of the jury, but rather is an effort to establish what the verdict was that the jurors agreed upon. *Kading v. Kading, supra.*

■ Jurors who misunderstand jury instructions cannot impeach their verdicts. Jurors who misunderstand the import of their verdict cannot impeach such verdicts. *Santilli v. Pueblo,* 184 Colo. 432, 521 P.2d 170 (1974); *Rome v. Gaffrey,* 654 P.2d 333 (Colo.App.1982).

■ Here, the jury verdict was read in open court and the special verdict forms were signed by all members of the jury. One verdict form award indicated total compensatory damages of $87,300 and a second verdict form awarded exemplary damages of $87,300. The court asked the parties if they wanted the jury polled and both declined. Under such circumstance, we conclude that subsequent impeachment of the verdict by a juror is not permitted. *See Rome v. Gaffrey, supra* (misunderstanding of law caused jury's verdict to be different than intended).

Defendant argues that the trial court erred in not accepting the juror's affidavit that the jury intended to award only a total of $87,300 and did not intend to award twice that amount.

■ Under Fed.R.Evid. 606(b), the courts have refused to impeach verdicts where the jurors have indicated that they intended to award the plaintiff a certain amount of money but because they did not understand the effect of the law on the damage award figure, they actually awarded another amount. *Peveto v. Sears, Roebuck & Co.,* 807 F.2d 486 (5th Cir.1987); *Continental Casualty Co. v. Howard,* 775 F.2d 876 (7th Cir.1985); *Smith v. City of Seven Points,* 608 F.Supp. 458 (E.D.Tex. 1985); *Multiflex, Inc. v. Samuel Moore & Co., supra.*

Our review of the case law interpreting the exception to Rule 606(b) which allows a party to impeach a jury verdict because of mistake or inadvertence, limits such mistakes to "clerical errors" in the transcription of the verdict. *Robles v. Exxon Corp.,* 862 F.2d 1201 (5th Cir.1989) (clerical error exists if the foreperson, in response to an interrogatory, writes down the damage amount different from that agreed upon by the jury); *United States v. Dotson,* 817 F.2d 1127 (5th Cir.1987) (foreperson mistakenly stated that the defendant was "guilty" when the jury had actually agreed that defendant was not guilty on one count).

The values sought to be promoted by excluding such evidence include freedom of deliberation by the jury, stability in the judicial process, the finality of verdicts, and protection of jurors against annoyance and embarrassment. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[03] (1990).

Here, the reading of the foreperson's affidavit indicates the error allegedly involved was more than a clerical transcription mistake by the jury. The mistake, if any, involved the jury's misunderstanding of the effect of the court's instructions and verdict forms. The affidavit indicates that $87,300 was written for both the compensatory damages award form (B) and the exemplary damages award form (C) because the jury did not understand the effect of the law on the verdict reached. This affidavit suggests that despite the jury's recording of both compensatory and exemplary damages, the jury intended that only one award of $87,300 be made.

In *Rome v. Gaffrey, supra,* the jury determined defendant's negligence to be 53 percent and plaintiff's to be 47 percent, with the total damages awarded to plaintiff at $200,000. The jury apparently interpreted the comparative negligence instructions and believed it was awarding plaintiff $6,000. Instead, because of the comparative negligence laws in Colorado, the jury actually awarded plaintiff $106,000. The defendant then argued that the jury verdict was a result of mistake and inadvertence and that, therefore, it should be set aside or reformed. This court found that the jurors' affidavits were inadmissible as they involved an improper inquiry into the jurors' mental processes in violation of CRE 606(b) and, therefore, reversed the trial court.

We conclude that this "mistake" is similar to the one in *Rome v. Gaffrey* because the jury intended to place the figures it did,

but because of its misunderstanding of the law and instructions, the result of the verdict was different than that which it intended. We, therefore, determine that the affidavit here improperly reveals the jurors' mental processes in arriving at the award of $87,300 and, thus, violates the prohibitions of CRE 606(b) and cannot be considered in impeaching the verdict.

The appropriate time for a juror to clarify his confusion with the law and its effect on a verdict is prior to discharge from jury service. Since a judge has a duty to respond to questions during deliberation in order to assist the jury in understanding and correctly applying the law, confusion can be eliminated. *Leonardo v. People,* 728 P.2d 1252 (Colo.1986).

We, therefore, conclude that the trial court properly rejected defendant's attempt to impeach the jury verdict because of mistake.

### IV.

■ Defendant also argues that the trial court erred in denying defendant's motion for a new trial before the end of the 10–day period allowed to file a reply brief.

Defendant argues that the trial court abused its discretion in not following the procedural deadlines set out in C.R.C.P. 121 § 1–15, subd. 1. We agree with defendant that the trial court must wait the statutorily mandated time period so that it can adequately consider the reply response before making its determination. However, under the circumstances here, we determine that such conduct does not constitute reversible error. *See* C.R.C.P. 61; *American National Bank v. First National Bank,* 28 Colo.App. 486, 476 P.2d 304 (1970); *Yoder v. Hooper,* 695 P.2d 1182 (Colo.App.1984), *aff'd,* 737 P.2d 852 (Colo. 1987).

### V.

■ Defendant also argues that the trial court erred in not instructing the jury, pursuant to *CJI–Civ.3d* 11:12 (1988), that when a driver of a motor vehicle strikes another

vehicle in the rear he is presumed to be negligent. We disagree.

In our view, plaintiff's striking of defendant's truck which was abandoned in the middle of Interstate 25 was outside the purview of accidents intended to be covered by *CJI–Civ.3d* 11:12 (1988). *See Bettner v. Boring,* 764 P.2d 829 (Colo.1988); *Harmon v. Stanley,* 56 Mich. App. 602, 224 N.W.2d 658 (1974). Hence, the trial court did not err in refusing to submit it to the jury.

### VI.

Defendant next contends the trial court erred in not granting a new trial based on excessive damages and improper jury instruction. We disagree.

Defendant argues there was no evidence to support the economic loss award. Plaintiff contends that the testimony of plaintiff's physician experts, coupled with that of plaintiff, established a sufficient basis for the jury to make an award for permanent impairment of plaintiff.

■ If a plaintiff provides evidence of a permanent disability, a court may instruct the jury on impairment of future earning capacity. A physician's testimony as to the likelihood of a plaintiff developing arthritis and having impaired mobility can be sufficient evidence to warrant giving the instruction. *Phillips v. Monarch Recreation Corp.,* 668 P.2d 982 (Colo.App.1983); *see also Zertuche v. Montgomery Ward & Co.,* 706 P.2d 424 (Colo.App.1985). Furthermore, in certain circumstances, where plaintiff presents evidence of an "increase in risk of harm," this is sufficient evidence for the jury to determine whether defendant's negligence probably caused plaintiff's loss. *Sharp v. Kaiser Foundation Health Plan,* 710 P.2d 1153 (Colo.App. 1985), *aff'd,* 741 P.2d 714 (Colo.1987).

■ Future earning capacity is typically affected by permanent injuries. Permanent injury can be established with testimony that plaintiff's injuries and difficulties will continue indefinitely into the future. *Phillips v. Monarch Recreation Corp., supra.*

Here, evidence of plaintiff's permanent disability included chronic headaches, post-traumatic concussion syndrome, increased risk of arthritis in the knee and neck, and permanent scarring. On this basis, we conclude there was sufficient evidence of plaintiff's disability for the trial court to instruct the jury on impairment of future earning capacity.

### VII.

Defendant finally contends the trial court erred in amending the judgment to include prejudgment interest on exemplary damages. We disagree.

C.R.C.P. 60(a) allows a trial court to amend judgments when interest has been omitted. *Reasoner v. District Court,* 197 Colo. 516, 594 P.2d 1060 (1979).

In *Bradley v. Guess,* 797 P.2d 749 (Colo. App.1989), *cert. granted,* October 9, 1990), relying on the statutory language of § 13–21–101, C.R.S. (1987 Repl. Vol 6A), this court held that a person receiving exemplary damages is entitled to prejudgment interest as to those damages.

Section 13–21–102(1)(a), C.R.S. (1987 Repl.Vol. 6A) states that exemplary damages may be assessed in civil actions for "willful and wanton conduct." The "willful" language of § 13–21–102 is essentially identical to the "willful intent" standard specified for awarding prejudgment interest in civil cases under § 13–21–101. We conclude the plain language of the statute is controlling and, therefore, the trial court was correct in amending the judgment to include prejudgment interest for exemplary damages. *Bradley v. Guess, supra.*

Accordingly, that part of the judgment in which the trial court reduced the exemplary damages award is reversed, and the judgment in all other respects is affirmed.

STERNBERG, C.J., and NEY, J., concur.