Albert REIFSCHNEIDER,
Plaintiff–Appellant,

v.

CITY AND COUNTY OF DENVER,
Defendant–Appellee,

and

Concerning John Gehlhausen, P.C., John
Gehlhausen, and Darla Scranton
Specht, Appellants.

No. 94CA1402.

Colorado Court of Appeals,
Div. III.

Oct. 26, 1995.

As Modified on Denial of Rehearing
Dec. 7, 1995.

Certiorari Granted June 10, 1996.

John Gehlhausen, P.C., John Gehlhausen, Darla Scranton Specht, Lamar, for Plaintiff–Appellant and Appellants.

Daniel E. Muse, City Attorney, Carl R. Mangino, Assistant City Attorney, Efrain M. Padro, Assistant City Attorney, Denver, for Defendant–Appellee.

Opinion by Judge BRIGGS.

Plaintiff, Albert Reifschneider, appeals the trial court's order granting the motion of defendant, City and County of Denver, for a new trial on the basis of juror confusion. Plaintiff and his attorneys, John Gehlhausen, P.C., John Gehlhausen, and Darla Scranton Specht (plaintiff's attorneys), also contest the trial court's order, prior to the second trial, awarding attorneys fees and costs to defendant upon dismissal of plaintiff's added claim for relief under 42 U.S.C. § 1983 (1988). We vacate the judgment of the second trial, reverse the order granting a new trial, and remand to the trial court with directions to reinstate the judgment entered on the jury verdict after the first trial. We also reverse the trial court's award to defendant of its attorney fees related to plaintiff's § 1983 claim and remand to the trial court for further proceedings.

### I.

Plaintiff first contends that the trial court erred in granting defendant's motion for a new trial on the basis of juror confusion. Under the circumstances presented here, we agree.

### A.

Plaintiff sued defendant and another party after he slipped and fell on an icy ramp at Mile High Stadium. After deliberations, the jury returned its verdict on Special Verdict

Form B, intended for use if judgment was for plaintiff.

The jury answered "Yes" to six of seven questions concerning liability. Those answers indicated the jury found that plaintiff incurred injuries caused by a dangerous condition resulting from defendant's negligent failure to maintain the stadium. The jury assigned 70% liability to defendant, 15% to a defendant not party to this appeal, and 15% to plaintiff, and awarded damages in the total amount of $250,000.

However, Special Verdict Form B was to be used only if *all* the answers to the questions on the verdict form were in the affirmative. In response to Question 2, "Did a dangerous physical condition exist on the ramps at Mile High Stadium, on December 1, 1991, which constituted an unreasonable risk to the health and safety of the public?," the jury answered "No."

The trial court excused the jurors from the courtroom and discussed the inconsistency with the parties' attorneys. The court decided to refer the jury to a paragraph of the instructions which stated: "If you find that the plaintiff, Albert Reifschneider, did incur injuries, damages, or losses and you have answered question No. 1 with 'yes', but on the other hand, if your answers to any of the questions numbered 2 through 7 was 'no', then your foreman or forewoman shall complete only Special Verdict Form A and he or she and all jurors will sign it."

The jury responded with a written statement and question: "We, the jury, looked at the key words 'reasonable' & 'unreasonable.' Read instruction 15 [defining "reasonable care"] for the definition of reasonable. We felt that it was a reasonable risk. What should we do now."

Further discussion among the court and attorneys ensued. The trial court determined it would poll the jurors individually as to Question 2.

The jurors returned, and the trial court informed them of the intended procedure. However, before the polling began, one juror stated: "Well, there was a definition of 'reasonable' and there wasn't one of 'unreasonable,' so we're just not sure what 'unreason-

able' means. If we could go back again, we could write how we get to that down for you and you could look at it."

The court initially agreed to this procedure and again excused the jury. After further discussion with counsel, the court announced its intention to enter judgment in favor of defendant, in accordance with the jury's answer to Question 2.

Before any action was taken, the jury submitted a written statement to the court, reading as follows: "We felt that the conditions [sic] of the ramp was dangerous (if in your words that means unreasonable). We felt that the Plaintiff determined that there was no unreasonable risk of his safety because the ramp was open. In rediscussing [sic] the definition of unreasonable we feel our answer should have been yes."

The trial court returned the verdict forms to the jury. The jury changed its answer to Question 2 from "No" to "Yes." The court then polled the jurors. Each agreed that it was his or her verdict. Judgment was accordingly entered for plaintiff.

Defendant filed a motion for new trial, claiming that misconduct of the jury and irregularity of the verdict denied it a fair trial. The court rejected the claim of jury misconduct, as well as claims that the verdict was inconsistent on its face and that the jury ignored the instructions. However, based on its review of the transcripts concerning the jury's deliberations and the jury's written statements, the court concluded that the jury was confused when it rendered its final verdict. Accordingly, it granted the motion for new trial. After a second trial, the jury returned its verdict, and judgment was entered for defendant.

**B.**

The decision whether to grant a motion for a new trial is within the discretion of the trial court. *See Aspen Skiing Co. v. Peer*, 804 P.2d 166 (Colo.1991). However, if the reasons for granting a new trial do not constitute proper legal grounds, then the decision must be reversed. *See DeMott v. Smith*, 29 Colo.App. 531, 486 P.2d 451 (1971).

CRE 606(b) excludes, among other things, evidence of any influence upon a juror's mind or emotions except for extraneous prejudicial information improperly brought to the juror's attention and for outside influence improperly brought to bear upon a juror. The values sought to be promoted by excluding such evidence include freedom of deliberation by the jury, stability in the judicial process, the finality of verdicts, and the protection of jurors against annoyance and embarrassment. *See Davis v. Lira,* 817 P.2d 539 (Colo.App.1991).

If inconsistencies in a jury's verdict indicate confusion, it is appropriate for the court to resubmit the verdict to the jury for clarification and, if necessary, to submit supplemental instructions. *See Davis v. Lira, supra; cf. Leonardo v. People,* 728 P.2d 1252 (Colo.1986). In contrast, despite any initial appearance of confusion, once a jury has rendered a consistent final verdict it is inappropriate to set aside the verdict because of the court's speculation that the confusion may have continued. *See Tyler v. District Court,* 200 Colo. 254, 613 P.2d 899 (1980); *Hotel Associates of Utah & Colorado v. Holiday Inns, Inc.,* 152 F.R.D. 206 (D.Utah 1993); *Lee v. State,* 526 N.E.2d 963 (Ind. 1988); *Whitehead v. City of Tulsa,* 614 P.2d 65, 68 (Okla.1980) ("A jury may change its mind any time before the verdict is rendered."); *see also People v. Collins,* 730 P.2d 293 (Colo.1986).

Here, aside from the fact that the jury could clarify any confusion before returning its verdict, the trial court's speculation as to continuing confusion intruded on the jurors' mental processes. Evidence of confusion therefore could not be considered in support of the motion for a new trial. *See* CRE 606(b); *Santilli v. Pueblo,* 184 Colo. 432, 521 P.2d 170 (1974); *Davis v. Lira, supra; Rome v. Gaffrey,* 654 P.2d 333 (Colo. App.1982); *Woods v. Fruehauf Trailer Corp.,* 765 P.2d 770 (Okla.1988) ("In this case the trial court did erroneously speculate about the jury's state of mind based on its questions...").

Contrary to defendant's separate argument on appeal, we find no basis for granting a new trial in the jury instructions. The elemental instructions and special verdict forms tracked applicable statutes and pattern jury instructions. Neither party made a record objection to any of the instructions in question. Defendant has not suggested any way in which the instructions were inherently confusing, nor do we find them to be so. Indeed, the identical instructions and special verdict forms were given at the second trial and did not result in any claimed juror confusion.

The trial court properly attempted to assist the jury by referring it back to the instructions and provided an opportunity to amend the verdict form so that it would be internally consistent. Upon reconsideration, the jury rendered a final, consistent verdict. Equally important, the jurors were polled, and each confirmed that the verdict was his or her verdict. *See Tyler v. District Court, supra,* 200 Colo. at 257, 613 P.2d at 901 ("The verdict for the petitioner in open court is the verdict of the jury.... [T]here is no inconsistency because there is only one verdict."); *Rome v. Gaffrey, supra.*

The trial court erred in granting the new trial based on the jury's supposed mental processes. Hence, the judgment entered after the second trial cannot stand and the judgment resulting from the first trial must be reinstated.

## II.

Plaintiff and his attorneys next contend that the trial court abused its discretion in awarding defendant its attorneys fees and costs incurred in obtaining the dismissal of a claim plaintiff added to the complaint, prior to the second trial, under 42 U.S.C. § 1983. We again agree.

We note initially that the parties have not addressed whether our reinstatement of the judgment entered after the first trial renders moot, and therefore precludes our review of, the imposition of sanctions based on plaintiff's amendment of his complaint prior to the second trial. Because the need to deter inappropriate conduct does not disappear even though the proceedings involving that conduct may have been undertaken

in error, and because defendant necessarily incurred fees as a result of the challenged conduct, we perceive no reason why the award should be moot or our review precluded.

Plaintiff's claim under 42 U.S.C. § 1983 alleged that, in failing to remove the snow and ice on the ramp, defendant had acted under color of state law and that defendant was grossly negligent, reckless, and had shown deliberate indifference to the public safety and human life. Plaintiff asserted that defendant's actions "violated [p]laintiff's due process protected rights to life, liberty, personal security and safe travel. . . ."

■ Defendant sought dismissal of the § 1983 claim pursuant to C.R.C.P. 12(b)(5) for failure to state a claim upon which relief could be granted, arguing that the negligent infliction of bodily injury is not a deprivation of any interest protected by the due process clause and that plaintiff had not alleged that defendant's conduct was the result of an established custom or policy. The trial court dismissed the claim, concluding that proper removal of snow and ice was not a right guaranteed by the federal constitution or other federal law.

■ Defendant also requested an award of attorney fees and costs incurred in responding to the claim under C.R.C.P. 11 and § 13–17–102, C.R.S. (1987 Repl.Vol. 6A). Both authorize imposition of sanctions if a claim is not well grounded in fact or is not warranted by existing law or a good-faith attempt to establish new law or extend, modify, or reverse existing law. *See Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo. 1984); *Maul v. Shaw,* 843 P.2d 139 (Colo. App.1992).

In seeking an award of fees and costs, defendant contended that plaintiff's claim of a deprivation of a federal right was frivolous and that plaintiff was aware there was no basis in the facts for claiming that a federal right was implicated by his injury. The court imposed the sanction based on its conclusion that claiming a federal right to proper snow removal was frivolous and without substantial justification.

The trial court was undoubtedly concerned that the due process clause not become a "font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405, 413 (1976). It may also have been reluctant to consider the application of § 1983 in circumstances in which the alleged conduct did not appear to be an abuse of governmental power. *See generally,* W. Burnham, *Separating Constitutional And Common–Law Torts: A Critique and a Proposed Constitutional Theory of Duty,* 73 Minn.L.Rev. 515 (1988–89) (proposing that claims under § 1983 be limited to those in which the loss was caused by a government entity or official enjoying a position of governmental power over the injured party and resulted from the official or entity exercising or attempting to exercise such power over the injured party). We nevertheless conclude that the trial court relied on an erroneous view of the law, and thus abused its discretion, in imposing sanctions.

■ When reviewing a motion to dismiss, a court must accept the material allegations of the complaint as true. *Douglas County National Bank v. Pfeiff,* 809 P.2d 1100 (Colo. App.1991). Because the sanctions here were likewise based on the failure to state a claim, the same assumption must apply to our analysis. *See Henderson v. Romer,* 910 P.2d 48 (Colo.App.1995) (upon review of the dismissal of a complaint, the appellate court is in the same position as the trial court).

■ In order to state a claim under § 1983, a plaintiff must allege, among other things, that the defendant acted under color of state law and that the plaintiff was deprived of a right, privilege, or immunity secured by the federal constitution or federal laws without due process of law. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Brown v. City of Colorado Springs,* 749 P.2d 475 (Colo.App.1987). In addition, to state a claim against a governmental entity rather than an individual, the plaintiff must allege that the act or acts complained of were the result of an established custom or policy. *See Monell v. Department of Social Services,* 436 U.S. 658, 98

S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Uberoi v. University of Colorado,* 713 P.2d 894 (Colo. 1986).

The Supreme Court in *Daniels* concluded that an allegation of injuries caused by a mere lack of due care does not state a violation of due process under § 1983 because such a claim fails to state the deprivation of any interest protected by the Due Process Clause. However, the Court was careful to note: "[T]his case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause." *Daniels v. Williams, supra,* (fn. 3).

■ In *Uberoi v. University of Colorado, supra,* the Colorado Supreme Court had occasion to determine whether injuries resulting from conduct that is less than intentional but more than mere negligence can provide the basis for claiming deprivation of any constitutionally protected interest. It concluded that allegations of injuries caused by recklessness or gross negligence adequately state the deprivation of an interest protected under § 1983.

Here, plaintiff alleged that defendant was grossly negligent, reckless, and showed deliberate indifference to public safety and human life with regard to removal of snow and ice. The trial court dismissed plaintiff's claim and awarded fees and costs solely because, in its view, there was no federal right to be free of injuries caused by even the reckless or grossly negligent conduct of a state employee. In light of existing law, and because we perceive no basis for distinguishing claims based on conduct of omission rather than commission, we conclude that it was error to impose sanctions on that basis. *See Uberoi v. University of Colorado, supra; Jones v. Board of Education,* 854 P.2d 1386 (Colo.App.1993).

■ Although under *Uberoi* reckless or grossly negligent conduct may constitute a deprivation in the constitutional sense, this does not necessarily end the inquiry. Plaintiff must also have had a good faith basis for alleging that a constitutional deprivation constituted a violation of due process by defen-

dant. As the Supreme Court held in *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Due Process Clause of the Fourteenth Amendment is not violated when a state employee's random, unauthorized act, even if intentional, deprives an individual of property, provided a meaningful post-deprivation remedy is available. It would appear the same would generally be true of an alleged deprivation of an interest in liberty. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

However, to the extent that plaintiff sought to allege a "custom" of failing to remove a dangerous condition creating an unreasonable risk to public safety, plaintiff arguably sought to assert more than a mere random, unauthorized act that defendant could not anticipate and institute procedures to prevent. Regardless of its ultimate merit, we cannot say that the assertion of such a claim against a local governmental entity under § 1983 is necessarily in bad faith. *See Zinermon v. Burch, supra; State of Colorado v. DeFoor,* 824 P.2d 783 (Colo.1992) (Mullarkey, J., concurring in part and dissenting in part); *Uberoi v. University of Colorado, supra; see generally* S. Bandes, Monell, Parratt, Daniels, and Davidson: *Distinguishing a Custom or Policy from a Random, Unauthorized Act,* 72 Iowa L.Rev. 101 (1986–87) (positing that the injurious acts or omissions of even low-level officials occurring with sufficient frequency and knowledge to be considered condoned may constitute a "custom" for which a local governmental entity should be liable under § 1983 because procedures could have been instituted that would have prevented the injury).

We recognize that plaintiff failed to allege in the amended complaint that the acts complained of were the result of an established custom or policy. However, plaintiff in his response to defendant's motion to dismiss requested leave to amend the complaint to add such an allegation and argued as if the pleadings had been amended to include such allegations. While the supreme court has disapproved such a procedure, in some circumstances the pleadings can be deemed to be so amended. *See Pima Financial Service*

*Corp. v. Selby,* 820 P.2d 1124 (Colo.App. 1991).

Because of the trial court's ruling, the proceedings involving the claim under § 1983 terminated before the court addressed plaintiff's request to amend or treat the complaint as so amended. It therefore did not base its imposition of sanctions on the failure to allege a custom or policy. Because of our ruling reinstating the judgment entered after the first trial, the issue will not come before the trial court again. Hence, it can provide no basis for imposing sanctions.

The trial court also did not address defendant's request for dismissal on the alternative basis that plaintiff was aware the facts did not support his claim under § 1983. We perceive no reason why the trial court may not still properly address that request. We also note that the trial court's order is unclear as to whether it was imposing sanctions against plaintiff, plaintiff's counsel, or both. For these reasons, it is necessary to remand for further proceedings to determine whether attorney fees and costs should be awarded because no basis existed in fact for an allegation of a custom or policy of failing to remove snow and ice adequately and, if so, the person or persons against whom such sanctions should be imposed.

The judgment of the trial court after the second trial is vacated, the order granting a new trial is reversed, and the cause is remanded to the trial court to reinstate the judgment entered after the first trial. The order awarding defendant its attorneys fees related to plaintiff's § 1983 claim is reversed, and the cause is remanded for further proceedings on this issue.

JONES, J., concurs.

RULAND, J., specially concurs.

Judge RULAND specially concurring.

I concur with the result reached by the majority, but I write separately because I believe we address issues in part II of the opinion that we need not address. *See Smeal v. Oldenettel,* 814 P.2d 904 (Colo.1991).

Specifically, because plaintiff proposed and defendant did not object to adding an allega-

tion relating to custom or policy, the amended complaint clearly stated a claim for relief. *See Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986); *State v. DeFoor,* 824 P.2d 783 (Colo.1992) (Mullarkey, J., concurring in part and dissenting in part). Hence, given the posture of this case, in my view, additional analysis is unnecessary.

Thus, I would remand for the trial court to address defendant's remaining contention that plaintiff knew or should have known, based upon the evidence presented in the first trial, that the facts did not support the pleaded claim and that, therefore, the claim was groundless.