THE STATE OF NEVADA, DEPARTMENT OF HUMAN RESOURCES, WELFARE DIVISION, APPELLANT, *v.* PAUL D. ELCANO, JR., AND ROBERT H. LUDLOW, RESPONDENTS.

No. 20113

July 18, 1990                                    794 P.2d 725

*Brian McKay,* Attorney General, Carson City; *Jonathan D. Carter,* Deputy Attorney General, Las Vegas, for Appellant.

*Joseph R. Plater,* Reno, for Respondents.

## OPINION

*Per Curiam:*

The principal issue in this appeal is whether the district court erred by ordering appellant to pay attorneys' fees to respondents based on the common fund doctrine. In the action below, the district court found that solely because of respondents' efforts, appellant will be reimbursed $196,379.96 from the State Industrial Insurance System. Thus, the district court ordered appellant to pay the attorneys' fees from the money to be reimbursed. We affirm.

### FACTS

Appellant, the State of Nevada Department of Human Resources, Welfare Division (Welfare Division), administers the Nevada Medicaid Division. Respondents, Paul Elcano and Robert Ludlow, are attorneys who successfully represented Leagh Lamoureaux on a worker's compensation claim before the State Industrial Insurance System (SIIS). In addition to the reimbursement due the Welfare Division, Elcano's and Ludlow's efforts have resulted in SIIS setting aside approximately eight million dollars to cover Lamoureaux's lifetime medical expenses. Elcano and Ludlow make no claim on this fund. Lamoureaux is now a ventilator-dependent quadriplegic.

While on the job, Lamoureaux contracted polio from exposure to raw, untreated sewage. However, at first, Lamoureaux's doctors could not diagnose his condition or pinpoint the cause. Therefore, SIIS was not billed for Lamoureaux's initial medical expenses. These were paid by his union's trust fund, an insurance company, the County of Santa Clara, California, and the Medicaid Division. Until now, the Medicaid Division has paid benefits

of $196,379.96 on claims totalling $264,713.34 for Lamoureaux's treatment.

Lamoureaux first retained Ludlow, a California lawyer, to assist him in obtaining all possible benefits. When Ludlow became concerned that Lamoureaux had polio and that it was job related, he attempted to associate with a Nevada attorney on the case. Nevertheless, no other attorney would take the case because of the apparent difficulty and unlikelihood of success. Finally, Elcano agreed to pursue Lamoureaux's claim. The referral agreement between Ludlow and Elcano stipulates that any attorneys' fees would be split 60 percent to Elcano and 40 percent to Ludlow.

Lamoureaux applied for permanent total disability worker's compensation benefits with SIIS, but his claim was denied by SIIS on the grounds there was insufficient evidence to conclude the claim was a compensable, occupational disease. After the denial, Elcano began extensive research to determine if Lamoureaux's quadriplegia was job related. Elcano then appeared on Lamoureaux's behalf to appeal SIIS' denial at a hearing before a Department of Administration Hearing Officer. The Hearing Officer reversed the denial and found that on review of the extensive material provided by Elcano, Lamoureaux, and SIIS, Lamoureaux contracted polio while on the job. SIIS and Lamoureaux's employer subsequently appealed the Hearing Officer's decision. During the pendency of the appeal, SIIS' own expert concluded that Lamoureaux had contracted polio on the job. SIIS and Lamoureaux's employer consequently withdrew their appeals and the parties settled the worker's compensation claim.

Thus, SIIS became obligated to reimburse Lamoureaux's medical providers, including the Welfare Division. Respondents then initiated this action to recover their attorneys' fees from the money to be reimbursed to the Welfare Division. The district court granted summary judgment in favor of respondents as to liability and, at the conclusion of the trial, awarded $29,493.36 to Elcano and $19,662.24 to Ludlow. Their combined award is approximately 25 percent of the Welfare Division's recovery. In addition, the district court found that Elcano's and Ludlow's representation of Lamoureaux was of the highest level and the result obtained equally outstanding. The district court further found that the Welfare Division never investigated whether Lamoureaux was entitled to worker's compensation benefits.

## DISCUSSION

On appeal, the Welfare Division argues that the district court

erred by awarding attorneys' fees to respondents under the common fund doctrine.

This argument lacks merit. An exception to the general rule that attorneys' fees may not be recovered by a party to litigation is the "common fund" doctrine. Guild v. First Nat'l Bank, 95 Nev. 621, 623, 600 P.2d 238, 239 (1979). If the efforts of a litigant or his attorney create a common fund benefitting third persons, the doctrine requires these passive beneficiaries to pay their fair share of litigation expenses by allowing the litigant or attorney to recover reasonable attorneys' fees from the common fund. Boeing v. Van Gemert, 444 U.S. 472, 478 (1980). Here, but for respondents' labor, the common fund would not have been created and the Welfare Division would not receive any money from SIIS. In addition, upholding the award would further the policies behind the common fund doctrine by being fair to respondents, requiring the Welfare Division to help pay for the expenses incurred in recovering its own money, and encouraging attorneys to undertake and diligently pursue cases such as this with the assurance of prompt and direct compensation. *Guild,* 95 Nev. at 623, 600 P.2d at 239, (quoting In re Stauffer's Estate, 346 P.2d 748, 752-753 (Cal. 1959)). Therefore, it is only right that the Welfare Division, as passive beneficiaries of respondents' efforts, pay attorneys' fees to respondents.

Accordingly, we find the district court did not err in ordering appellant to pay attorneys' fees to respondents from the common fund.

Having considered the parties' remaining contentions, we conclude they lack merit.[1] Hence, we affirm the judgments below.

---

[1]The Welfare Division's attempt to extend the rationale of Consumers League v. Southwest Gas, 94 Nev. 153, 576 P.2d 737 (1978) to this case is unpersuasive. *Consumers League* is factually distinguished and thus not controlling authority.