**Joel LIRA, Petitioner,**

v.

**Jeffrey A. DAVIS, Respondent.**

**No. 91SC253.**

Supreme Court of Colorado,
En Banc.

July 13, 1992.

---

Lapin, Herrick–Stare, Hubbard & Johnson, P.C., James B. Lapin, Julian M. Izbiky, Denver, for petitioner.

Fogel, Keating & Wagner, P.C., Alan C. Shafner, Timothy F. Devereux, Denver, for respondent.

Schaden, Lampert & Lampert, Brian J. Lampert, Susanna Meissner–Cutler, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Long & Jaudon, P.C., Frederick W. Long, Lee A. Lindsay, Denver, for amicus curiae Colorado Defense Lawyers Ass'n.

Chief Justice ROVIRA delivered the Opinion of the Court.

This case requires us to consider the interrelationship of the comparative negligence, the pro rata liability, and the exemplary damages statutes, to construe the exemplary damages statute, which limits the amount of exemplary damages to the amount of "actual damages awarded," and to determine whether prejudgment interest should be applied to an exemplary damages award.

## I

Jeffrey A. Davis, respondent, brought an action against Joel Lira, petitioner, and David Gutierrez, Edgar Gunn, and Jim Cannon for injuries suffered as a result of an automobile accident which occurred in January 1988. The jury allocated the percentage of negligence as follows: (1) Lira—50%; (2) Gutierrez—23%; (3) Gunn—15%; (4) Cannon—0%, and; (5) Davis—12%. The jury found for Davis in the amount of $87,300 for actual damages and $87,300 on his claim for exemplary damages against Lira.[1]

In entering judgment against Lira, the trial court applied the comparative negligence statute, section 13–21–111, 6A C.R.S. (1987), and the pro rata liability statute, section 13–21–111.5, 6A C.R.S. (1987 & 1991 Supp.), and reduced the compensatory damages award. Accordingly, the court determined Lira's liability for actual damages to be 50% of $87,300, or $43,650.[2] Additionally, pursuant to section 13–21–102(1)(a), 6A C.R.S. (1987), the exemplary damages statute, the court reduced the exemplary damages award against Lira by 50%, to $43,650. Prejudgment interest was allowed on both the compensatory and exemplary damages awards. The court of appeals reversed the trial court's ruling reducing the exemplary damages award, holding that the statutory limitation of punitive damages to "actual damages awarded" meant that the award should be no greater than "total compensatory damages" awarded to the plaintiff prior to adjustment affecting reduction for the negligence of the plaintiff and parties other than Lira. It also upheld the award of prejudgment interest on the exemplary damages. *Davis v. Lira*, 817 P.2d 539, 541–42, 546 (Colo.App.1991). We granted certiorari to consider whether the court of appeals erred in not applying the comparative negligence statute to exemplary damages and permitting prejudgment interest on the exemplary damages award.

## II

Determination of the amount of exemplary damages available where the plaintiff

---

1. The terms "actual damages" and "compensatory damages" are used interchangeably throughout this opinion. Additionally, although the Colorado statutes consistently refer to "exemplary damages," these damages are also called "punitive damages," and these terms are used interchangeably.

2. The entry of judgment against Lira does not clearly set out the method by which the court arrived at the final compensatory damages award. However, the court awarded total damages of $98,967, which included $43,650 as exemplary damages, $5,833.50 of interest on the compensatory award, and $5,833.50 of interest on the exemplary damages award. Therefore, the total amount of compensatory damages awarded against Lira had to be $43,650, which is consistent with the attribution of 50% fault to Lira. Thus, we assume the trial court correctly determined Lira's liability for actual damages pursuant to the pro rata liability statute.

has been found to be negligent requires us to consider the interplay of three statutes. We first consider whether punitive damages are subject to reduction on the basis of assigned fault as determined by application of the comparative negligence and pro rata liability statutes. Then we focus on the effect of the exemplary damages statute which limits punitive damages to the amount of actual damages awarded.

## A

■ The comparative negligence statute, section 13–21–111, 6A C.R.S. (1987), provides in pertinent part:

(1) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but *any damages* allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

. . . .

(3) [T]he court shall *reduce the amount of the verdict* in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made; but, if the said proportion is equal to or greater than the negligence of the person against whom recovery is sought, then, in such event, the court shall enter a judgment for the defendant.

(Emphasis added.) In Colorado we adhere to a modified system of comparative negligence. Under this system, a plaintiff may recover from a defendant as long as the plaintiff's negligence is less than the defendant's negligence. The plaintiff's recovery for compensatory damages is diminished in proportion to his negligence. *See* 5 Marilyn Minzer, Jerome H. Nates, Clark D. Kimball, Diana T. Axelrod & Richard P. Goldstein, *Damages in Tort Actions* § 48.-12[1], 48–21 (1992) (hereinafter *"Damages in Tort Actions"*).

Subsection (1) of the pro rata liability statute, section 13–21–111.5, 6A C.R.S. (1987 & 1991 Supp.), is applicable where there are multiple defendants, and provides in relevant part:

(1) In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss. . . .

Thus, where there are multiple defendants, after jury determination of total compensatory damages, the court applies the comparative negligence and pro rata liability statutes and enters a judgment against each defendant for compensatory damages apportioned in accordance with the percentage of fault attributable to that defendant. Both section 13–21–111 and section 13–21–111.5 operate to reduce total compensatory damages in proportion to assigned fault as found by the jury. A negligent plaintiff will remain responsible for an amount of incurred actual damages in proportion to the fault assigned to him, and each defendant will be liable for the percentage of the total actual damages in accordance with the fault apportioned him by the jury.

As to exemplary damages, our court of appeals in *Bodah v. Montgomery Ward & Co., Inc.,* 724 P.2d 102, 104 (Colo.App. 1986), and *Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6, 13 (Colo. App.1986) (relying on *Bodah*), held that exemplary damages awards would not be *reduced by the plaintiff's comparative negligence.* These decisions examined whether comparative negligence principles should be directly applied to punitive damages, and concluded that "the purpose of punitive damages is to punish the wrongdoer as an example to others, and not to compensate the plaintiff, [and therefore] an award of punitive damages is unrelated to the plaintiff's conduct." *Bodah,* 724 P.2d at 104.

In the majority of jurisdictions, direct reduction of a punitive damages award by the plaintiff's percentage of fault is reject-

ed because such reduction is inconsistent with the purposes of punitive damages—punishment and deterrence. *See generally Damages in Tort Actions* § 40.54, 40–247; Francis M. Dougherty, Annotation, *Effect of Plaintiff's Comparative Negligence in Reducing Punitive Damages Recoverable,* 27 A.L.R.4th 318 (1984). *See also Friley v. International Playtex, Inc.,* 604 F.Supp. 126 (W.D.Mo.1984); *Amoco Pipeline Co. v. Montgomery,* 487 F.Supp. 1268, 1273 (W.D.Okla.1980); *Tampa Electric Co. v. Stone & Webster Engineering Corp.,* 367 F.Supp. 27, 38 (M.D.Fla.1973); *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112, 122 (1984) (affirming the trial court's refusal to apportion punitive damages based on the percentage of fault attributed to the parties under the comparative negligence standard); *Shahrokhfar v. State Farm Mutual Auto. Ins. Co.,* 194 Mont. 76, 634 P.2d 653, 659 (1981) ("[P]unitive damages cannot be reduced by the percentage of plaintiff's contributory negligence."); *Comeau v. Lucas,* 90 A.D.2d 674, 455 N.Y.S.2d 871, 873 (1982) ("punitive damages are not subject to apportionment"); *Turner v. Lone Star Industries, Inc.,* 733 S.W.2d 242 (Tex.App. 1987) (where award of punitive damages supported by finding of gross negligence, punitive damages will not be reduced by percentage of contributory negligence); *Hondo's Truck Stop Cafe, Inc. v. Clemmons,* 716 S.W.2d 725, 726 (Tex.App.1986); *Danculovich v. Brown,* 593 P.2d 187, 193–94 (Wyo.1979).

Colorado's first exemplary damages statute was enacted in 1889. S.B. 11, act approved Feb. 19, 1889, sec. 1, 1889 Colo. Sess.Laws 64. From the beginning, we identified two purposes of punitive damages—punishing the wrongdoer and setting an example for others. "Such damages rest upon the right to punish and not the right of the injured party to compensation for the wrong done." *French v. Deane,* 19 Colo. 504, 511, 36 P. 609, 612 (1894). The amount of a punitive damages award should be based on a consideration of the "severity of the injury perpetrated on the injured party by the wrongdoer." *Kirk v. Denver Pub. Co.,* 818 P.2d 262, 266 (Colo. 1991).

The amicus curiae, Colorado Defense Lawyers Association (the Association), urges that the language of section 13–21–111(1), "any damages allowed shall be diminished," indicates a legislative intent that both compensatory and punitive damages be subject to reduction for comparative negligence. The Association further argues that the language in section 13–21–111(3), which requires that where the negligence of the plaintiff does not equal or exceed the negligence of the defendants, the court shall "reduce the verdict" in proportion, encompasses a verdict awarding both compensatory and punitive damages and, therefore, both should be reduced. We find equally persuasive, however, the counter assertion that the terms "any damages" and "verdict" refer to an assessment of damage resulting from the injury itself, and not to damages assessed due to misconduct of the defendant.

Subsections (1) and (3) of section 13–21–111, the comparative negligence statute, require adjustment of damages based on the percentage of negligence attributable to the plaintiff, thus focusing on the plaintiff's conduct. Therefore, comparative negligence principles should not be applied to reduce damages which focus on defendant's misconduct. We join the majority of jurisdictions and hold that exemplary damages are not subject to reduction by application of the comparative negligence statute.

B

■ We next examine the effect of the one-to-one limitation of exemplary damages to "actual damages awarded" as provided for in the exemplary damages statute. Subsection (1)(a) of section 13–21–102, 6A C.R.S. (1987), was amended in 1986 by House Bill 1197 to limit the amount of exemplary damages to the amount of "actual damages awarded." This provision, therefore, mandates a one-to-one limitation of exemplary damages to actual damages awarded:

In all civil actions in which damages are assessed by a jury for a wrong done

to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. *The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.*

Act approved May 16, 1986, ch. 106, sec. 1, 1986 Colo.Sess.Laws 677 (emphasis added to reflect addition to subsection).[3]

Lira contends that the statutory limitation of exemplary damages to "the amount of the actual damages awarded" refers to reduced compensatory damages.[4] Conversely, Davis argues that "actual damages awarded" refers to the pre-reduction compensatory damages. The court of appeals held that the term "actual damages awarded," as the standard for limitation of exemplary damages, refers to the "total compensatory damages awarded to plaintiff prior to adjustment affecting reductions for the negligence of the plaintiff," or the pre-reduction amount. *Davis v. Lira,* 817 P.2d 539, 542 (Colo.App.1991). We disagree.

The effect of the comparative negligence, pro rata liability and exemplary damages statutes on each other is best described by way of illustration. Where the jury finds the plaintiff's compensatory damages were $87,300 and he was 12% at fault with one of perhaps several defendants being 50% at fault, application of the comparative negligence statute would reduce that plaintiff's recovery by 12%. Application of the pro rata liability statute would result in liability of 50% for the defendant found to be 50% at fault. Therefore, that defendant would be liable for a reduced compensatory damages judgment of $43,650. Where the jury also finds for the plaintiff on his claim for punitive damages in the amount of $87,300 against the 50%–at–fault defendant, the total amount recoverable would vary depending on whether the exemplary damages were limited to no greater than the pre-reduction compensatory damages or no greater than the reduced compensatory damages. If limited only by pre-reduction compensatory damages, the plaintiff would be awarded $43,650 in compensatory damages and $87,300 in exemplary damages, totalling $130,950. However, if the exemplary damages amount was limited to the reduced compensatory amount, the plaintiff could recover $43,650 in compensatory damages and $43,650 in exemplary damages, totalling $87,300.[5]

---

3. Section 13–21–102 was also amended to allow the court to reduce or disallow exemplary damages if the deterrent effect of such damages has been accomplished or the purpose of such damages has otherwise been served. § 13–21–102(2)(a) and –(2)(c). Additionally, in a civil action case where punitive damages are sought, the net worth or income of a party cannot be considered in determining the amount of punitive damages.

4. For ease of discussion, we will refer to the compensatory damages figure prior to judicial adjustment for comparative negligence and pro rata liability as the "pre-reduction compensatory damages" and the figure after reduction for comparative negligence and pro rata liability as the "reduced compensatory damages."

5. We note that this second illustration would produce the same result if comparative negligence principles were applied directly to the punitive damages award. We have already determined, however, that punitive damages are not subject to reduction based on comparative negligence principles. Furthermore, by way of

additional illustration, we point out that simple application of reduction for comparative negligence to the punitive damage award would not always produce the same result as would invoking the one-to-one limitation of exemplary damages to the reduced compensatory damages figure. For example, consider the case of a plaintiff found to be 12% at fault with one defendant found to be 50% at fault. The jury determines that the plaintiff suffered actual damages of $250,000 and awards punitive damages against the 50%-at-fault defendant in the amount of $100,000. If comparative negligence principles were applied to both the compensatory and the punitive damages amounts, the plaintiff could recover $125,000 and $50,000 from that defendant, totalling $175,000. However, if only the compensatory damages were reduced by comparative negligence principles, the compensatory damages amount would equal $125,000. The punitive damages, not reduced by comparative negligence but subject only to the one-to-one limitation on the pre-reduction compensatory amount, would equal $100,000. Thus, total recovery for the plaintiff against the defendant would be $225,000.

In interpreting a statute, we first look to the statutory language. *Colorado State Board of Medical Examiners v. Saddoris*, 825 P.2d 39, 42 (Colo.1992). Section 13–21–102 refers first to the compensatory damages "assessed" by a jury. This language, undoubtedly, refers to pre-reduction compensatory damages. The statute then refers to the jury's authority to "award" exemplary damages, and lastly states that the amount of exemplary damages shall not exceed the actual damages "awarded." We presume the legislature, by referring to compensatory damages within the same provision first as "damages assessed" and then as "damages awarded" intended that different meanings attach to these two terms. *See City of Florence v. Board of Waterworks of Pueblo*, 793 P.2d 148, 151 (Colo.1990) (in interpreting statute, each word should be given effect). In preference to forced or strained interpretations, statutory terms should be given their common, ordinary meaning. *Triad Painting Co. v. Blair*, 812 P.2d 638, 644 (Colo.1991). "Assess" is defined as "to determine the rate or amount of" and, as an example of word usage, includes "assess damages after an accident." *Webster's Third New International Dictionary of the English Language, Unabridged* 131 (1986). *See also Black's Law Dictionary* 116 (6th ed. 1990) (primarily defining "assess" as "[t]o ascertain; fix the value of. To fix the amount of damages...."). "Award" is defined as "to determine after careful consideration" and "to give by judicial decree" or "assign after careful judgment." *Webster's* at 152. *See also Black's Law Dictionary* at 137 (to award is "[t]o grant, concede or adjudge to," or "[t]o give or assign by ... judicial determination...."). Thus

the common meaning of "award" and "assess" leads us to conclude that the reference to damages assessed is synonymous with the pre-reduction compensatory amount and the reference to damages awarded equates to the reduced compensatory amount.

Although the one-to-one limitation of punitive damages to compensatory damages is unique to Colorado and Oklahoma,[6] *Damages in Tort Actions* § 40.05, 40–19, the term "damages awarded" has been interpreted in one other jurisdiction. In *Tucker v. Marcus*, 142 Wis.2d 425, 418 N.W.2d 818 (1988), the jury awarded the plaintiff both compensatory and punitive damages. However, application of the contributory negligence statute (almost verbatim of section 13–21–111(1), 6A C.R.S. (1987)) barred collection of any compensatory damages because the plaintiff was found to be 70% causally negligent. The majority adopted the rule that "punitive damages are not available where there has been no 'award' of actual damages." *Id.* 418 N.W.2d at 823. We agree with the court's determination that the term "award" means "a remedy recoverable in accordance with an order for judgment," not the amount of compensatory damages initially determined by the jury. *Id.* Thus, exemplary damages are limited to damages recovered in accordance with an order for judgment, or the reduced compensatory amount.[7]

Our conclusion effectuates the legislature's intent in enacting House Bill 1197, ch. 106, sec. 1, § 13–21–102(1)(a), 1986 Colo. Sess. Laws 675, which amended section 13–21–102(1)(a) as part of the sweeping tort-reform legislation of 1986.[8] *See Kirk v.*

---

**6.** Although in Oklahoma, if the plaintiff proves by clear and convincing evidence that the defendant engaged in conduct justifying punitive damages, the jury is not limited in its punitive damages award. Okla.Stat.Ann. tit. 23, § 9(A) (West 1987).

**7.** The court of appeals relied on *White v. Hansen*, 813 P.2d 750 (Colo.App.1990), *cert. granted*, No. 91SC162 (Colo. Aug. 5, 1991), to support the conclusion that "actual damages awarded" equals the pre-reduction amount and not the reduced amount. *Hansen* considered, *inter alia*, the issue of whether exemplary damages could

be awarded notwithstanding the inability of the plaintiff to receive compensatory damages since the plaintiff was 50% comparatively negligent. *Hansen* is readily distinguishable, however, as *Hansen* involved the exemplary damages statute, § 13–21–102(1)(a), before it was amended in 1986.

**8.** The Colorado legislature enacted other tort-reform statutory provisions contemporaneously with House Bill 1197. *See, e.g.*, § 13–21–102.5, 6A C.R.S. (1987) (limiting the recovery of damages for non-economic losses), and § 13–21–

*Denver Publishing Co.*, 818 P.2d 262, 263 (Colo.1991). There is no doubt that the purpose of House Bill 1197 was to limit excessive punitive damages awards. *See Hearings on H.B. 1197 before the House State Affairs Comm.*, 55th Gen. Assembly, 2nd Sess. (Audio Tape Feb. 4, 1986). The title of the bill itself, "An Act Concerning the Award of Damages, and Providing for Limitation Thereon and for the Disposition Thereof," is indicative of such purpose. Additionally, Representative Grant, a sponsor of the bill, stated that its purpose was "to restrict a party's punitive damages to an amount not in excess of actual damages." By this bill, he stated, "we're allowing a doubling of the liability ... against the wrongdoer, over and above and twice the amount of actual damages.... You are providing a sufficient deterrence, sufficient punishment against that wrongdoing." *Second Reading of H.B. 1197*, 55th Gen. Assembly, 2nd Sess. at 2:14 p.m. (Audio Tape Feb. 26, 1986). Lastly, Representative Grant stated that: "We're talking about a limitation that is reasonable, appropriate, that I think effectively doubles the potential liability of a wrongdoing party." *Id.* at 2:18 p.m. If the exemplary damages are limited to the reduced compensatory damages amount, then the purpose of the bill as articulated by its sponsor would be promoted because a defendant would be responsible for paying a maximum of twice the amount of damages he is determined to owe after reduction for the apportionment of fault. Representative Grant's statements focused on the liability of the tortfeasor. Since under the comparative negligence and pro rata liability statutes, one of several negligent persons is only responsible for damages in accordance with his determined percentage of fault, that party's liability for punitive damages should be no greater than the amount of actual damages he owes.

Accordingly, we hold that the exemplary damages statute, section 13–21–102, 6A

111.5, 6A C.R.S. (1987 & 1991 Supp.) (provides for pro rata liability of multiple defendants).

**1.** The precise issues on which the court granted certiorari are:

C.R.S. (1987), places a maximum on a plaintiff's exemplary damages award recovery which is measured by the amount of compensatory damages after reduction for comparative negligence and pro rata liability.

### III

■ The court of appeals held that the trial court correctly awarded prejudgment interest on the exemplary damages award. However, in *Seaward Construction Company, Inc. v. Bradley*, 817 P.2d 971, 979 (Colo.1991), we held that prejudgment interest does not apply to exemplary damages.

In summary, we find that the plaintiff's comparative negligence should not be directly applied to reduce exemplary damages. The amount of exemplary damages—statutorily limited to the amount of "actual damages awarded"—should not exceed the amount of compensatory damages after such damages have been reduced by judicial application of the comparative negligence and pro rata damages statutes, section 13–21–111, 6A C.R.S. (1987), and section 13–21–111.5, 6A C.R.S. (1987 & 1991 Supp.), respectively. Additionally, exemplary damages are not subject to prejudgment interest. Accordingly, we reverse with directions to the court of appeals to remand to the trial court for entry of judgment in accordance with the views expressed in this opinion.

ERICKSON, J., concurs in part and dissents in part, and MULLARKEY, J., joins in the concurrence and dissent.

Justice ERICKSON concurring in part and dissenting in part:

We granted certiorari to determine whether the prejudgment interest statute is applicable to exemplary damages and whether the comparative negligence statute applies to an award of exemplary damages.[1]

1. Whether the court of appeals conclusion that prejudgment interest is applicable to exemplary damages is in error; and
2. Whether the refusal of the court of appeals to apply the comparative negligence

I concur with the majority that the prejudgment interest statute is not applicable to an award of exemplary damages. I also agree that exemplary damages are not subject to reduction by application of the comparative negligence statute for the reasons stated in the majority opinion. However, I disagree that exemplary damages are limited to the judgment for compensatory damages after reduction of the jury award for comparative negligence.

The respondent, Jeffrey A. Davis, was severely injured in an automobile accident that occurred in the early morning hours of January 3, 1988. The petitioner, Joel Lira, was driving on I–25 after he and some friends had been out drinking. Lira and another driver, Edgar Gunn, engaged in a game of "road warriors" on I–25. They eventually stopped their vehicles in a travel lane of the highway and engaged in a fist fight. After the fight, Gunn and David Gutierrez, a passenger in Gunn's car, took the keys from Lira's vehicle and drove away. Lira did not activate the truck's flashers or otherwise signal oncoming traffic before he abandoned his truck and went to a bar for a few drinks before he went home. Davis drove his car into the rear of the abandoned truck and was seriously injured.

The jury determined that Lira, the defendant in the trial court, was 50% negligent and assessed negligence against Gutierrez in the amount of 23%, Gunn in the amount of 15%,[2] and Davis in the amount of 12%. Davis was awarded $87,300 as compensatory damages. The jury also awarded Davis $87,300 in exemplary damages against Lira. Lira was the only defendant who participated in the trial. The trial court entered judgment in favor of Davis and reduced the compensatory damages found by the jury by 50%, to $43,650, in accordance with the comparative negligence statute and the pro rata liability statute. §§ 13–21–111, –111.5, 6A C.R.S. (1987 & 1991 Supp.). Section 13–21–111(3) requires

statute to exemplary damages is in conflict with the legislative intent of the statute and contrary to public policy.

the court to reduce the damages allowed in proportion to the amount of negligence attributable to the plaintiff, and section 13–21–111.5 states that no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence attributable to such defendant. The trial court also reduced the exemplary damages by 50% to $43,650. It added prejudgment interest of $5,833.50 to the compensatory damages award and later amended the award of exemplary damages by adding $5,833.50 as prejudgment interest on the exemplary damages award.

I agree with the majority's conclusion that the court of appeals erred in determining that prejudgment interest applies to exemplary damages. *See Seaward Const. Co., Inc. v. Bradley*, 817 P.2d 971 (Colo. 1991). I write separately because I disagree with the majority's conclusion that the maximum amount of exemplary damages is the amount entered as judgment for compensatory damage after the jury's award is reduced for comparative negligence and pro rata liability.

Section 13–21–102(1)(a) provides:

In all civil actions in which *damages are assessed by a jury* for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the *actual damages awarded to the injured party.*

(Emphasis added.) In my view "actual damages awarded to the injured party," as the phrase is used in section 13–21–102, means those damages assessed and awarded by the jury. Black's Law Dictionary (6th ed. 1990), defines both assess and award:

**2.** Gutierrez and Gunn were named as defendants but did not participate in the trial. A default judgment was entered against Gunn prior to trial.

**Assess,** To ascertain; fix the value of. To fix the amount of the damages or the value of the thing to be ascertained. To impose a pecuniary payment upon persons or property. To ascertain, adjust, and settle the respective shares to be contributed by several persons toward an object beneficial to them all, in proportion to the benefit received.

**Award,** To grant, concede, or adjudge to. To give or assign by sentence or judicial determination or after careful weighing of evidence. Thus, a jury *awards* damages; the court *awards* an injunction; one *awards* a contract to a bidder. To confer as being deserved or merited.

*Id.* at 116, 137. The definitions in Black's Law Dictionary, in my view, support the adjustment of compensatory damage, but not the exemplary damages. Read in context with the entire section 13–21–102(1)(a), the term "awarded" in the last sentence refers to those damages assessed by the jury as set forth in the first sentence of that section. While the use of different terms generally implies that each term has a different meaning, *see City of Florence v. Board of Waterworks of Pueblo,* 793 P.2d 148, 151 (Colo.1990), the use of "assessed" in the last sentence would have resulted in awkward wording. The phrase "actual damages awarded to the injured party" is thus merely a shortened form of "damages ... assessed by a jury for a wrong done to the person or to personal or real property."

In addition, the reasonable exemplary damages in the first sentence of section 13–21–102(1)(a) are awarded by the jury. An interpretation that "actual damages awarded to the injured party" means actual damages as reduced by the trial court would require us to interpret "reasonable exemplary damages" in the last sentence to mean those determined by the trial court. The use of the terms assess and award does not justify interpreting the phrase "reasonable exemplary damages" to have two different meanings.

I would also emphasize that the only participating defendant before the court was Lira and the jury verdict form specifi-

cally stated that the jury found "for the plaintiff, Jeffrey Davis, on his claim for exemplary damages and awarded $87,-300.00, against the defendant, Joel Lira, as exemplary damages." Therefore, the trial court erred in reducing the jury's award for exemplary damages to the amount of compensatory damages recovered under the comparative negligence statute.

I agree with the majority that the amount of compensatory damages awarded by the jury is reduced by the comparative negligence statute and the pro rata statute and that the comparative negligence statutes do not directly reduce the amount of exemplary damages awarded the jury. However, I disagree that the amount of exemplary damages should be indirectly reduced by limiting the jury's award of exemplary damages to the amount of compensatory damages established by the court. To do so would be to disregard the legislative intent behind the comparative negligence statute and the pro rata statute as well as the purpose of exemplary damages.

The court of appeals in *White v. Hansen,* 813 P.2d 750 (Colo.App.1990), correctly analyzed the applicability of comparative negligence to exemplary damages. Exemplary damages are intended to punish the wrongdoer rather than to reward the plaintiff. *Leidholt v. District Court,* 619 P.2d 768 (Colo.1980). As the majority states, an award of exemplary damages cannot be reduced by the percentage of comparative negligence assessed the plaintiff. Maj. op. at 243; *see also, Jacobs v. Commonwealth Highland Theatres, Inc.,* 738 P.2d 6 (Colo. App.1986); *Bodah v. Montgomery Ward & Co., Inc.,* 724 P.2d 102 (Colo.App.1986).

The General Assembly has provided for an award of reasonable exemplary damages under section 13–21–102 if the "damages are assessed by a jury for a wrong done to the person" and are attended by circumstances of fraud, malice, or willful and wanton conduct. § 13–21–102(1)(a); *White,* 813 P.2d at 752. Thus, the necessary predicate for an award of exemplary damages is injury or loss "which is monetarily quantified by a jury," not a receipt of compensatory damages by the plaintiff.

*See id.* at 753. The determination of whether a plaintiff may recover exemplary damages is properly made before application of the comparative negligence statute, section 13–21–111, and the pro rata statute, section 13–21–111.5.

The jury here determined that Davis suffered actual damages of $87,300. Applying the comparative negligence statute and the pro rata statute, the trial court calculated the amount of the judgment against Lira for compensatory damages by reducing the actual damages by 50% as determined by the jury, in accordance with Lira's degree of fault. With regard to exemplary damages, however, the jury's award of $87,300 for Davis was predicated upon the willful and wanton conduct of Lira and did not relate in any way to the negligence of others. Thus, the jury's award of exemplary damages should not be reduced.

Accordingly, the trial court erred in reducing exemplary damages and in awarding prejudgment interest on the exemplary damages. I would reverse the court of appeals decision upholding the award of prejudgment interest on the exemplary damages. However, I would affirm that part of the court of appeals decision that reversed the reduction of exemplary damages and upheld the jury's award of $87,300 as exemplary damages.

MULLARKEY, J., joins in this concurrence and dissent.

