HARRIETTE TURNBOW, Appellant, v. STATE OF NEVADA, Department of Human Resources, Welfare Division and LINDA A. RYAN, in Her Capacity as State Welfare Administrator, Respondents.

No. 23495

May 27, 1993                                853 P.2d 97

*Petersen & Petersen,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, and *Gerald E. Weis,* Deputy Attorney General, Carson City, for Respondents.

## OPINION

*Per Curiam:*

### FACTS

In 1974, Harriette Turnbow ("Turnbow") purchased a major medical insurance policy from Pacific Mutual Life Insurance Company and Beneficial Employees Security Trust (the "insurers"). In 1981, Turnbow suffered a massive stroke which totally disabled her. The insurers paid Turnbow under the policy until 1984, at which time they wrongfully terminated her benefits. Following the termination of Turnbow's benefits, Medicaid, as administered by respondent State of Nevada, Department of Human Resources, Welfare Division (the "Division") paid for Turnbow's health care. Turnbow incurred $240,116.96 in medical bills. The Division expended $166,037.67 for Turnbow's care which, under the Medicaid program, satisfied the bills in full.

Turnbow sued her insurers. Pursuant to NRS 422.293, the Division filed a $124,002[1] lien against the potential proceeds of Turnbow's action. The jury awarded Turnbow $1.4 million in compensatory damages and $1.2 million in punitive damages. In 1991 Turnbow received a gross settlement in the amount of $3.2 million. Turnbow paid $1,649,648.67 in attorney's fees.[2]

Generally speaking, NRS 422.293 provides a means for the Division to recover from responsible parties the resources it has expended assisting indigent persons. In 1989 the legislature amended NRS 422.293 by adding subsections 5 and 6. NRS 422.293(5) provides:

> 5. If the welfare division receives notice pursuant to subsection 4, the administrator may, in consideration of the legal services provided by an attorney to procure a recovery

---

[1]The Division has since increased the lien to $166,037.67.

[2]Turnbow hired her appellate counsel, who did not represent her below, on an hourly basis.

for the recipient, reduce the lien on the proceeds of any recovery.

In March 1992, Turnbow filed an action in district court seeking a declaration that NRS 422.293(5) simply authorized the state welfare administrator (the "Administrator") to reduce a Division lien, but did not preclude the district court from reducing a lien according to the common fund doctrine as articulated by this court in State, Dep't of Human Resources v. Elcano, 106 Nev. 449, 794 P.2d 725 (1990). Turnbow contended that under *Elcano,* because the Division sought a portion of her recovery, the division was liable for a proportionate share of her litigation expenses.[3]

Turnbow argued that the proper formula for determining the Division's share of expenses was set forth in Breen v. Caesars Palace, 102 Nev. 79, 85, 715 P.2d 1070, 1074 (1986). Under *Breen,* the Division's share of litigation expenses would be calculated thusly:

$$\text{Division's share} = \frac{\text{amount of Division's lien}}{\text{settlement—litigation expenses}}$$

$$= \frac{\$166,037.67}{\$3,200,000-\$1,649,648.67}$$

$$= 0.107$$

Thus, the Division would be liable for roughly ten percent of Turnbow's $1,649,648.67 litigation expenses:

$$0.107(\$1,649,648.67)=\$176,512.40$$

Accordingly, the Division would be liable for $176,512.40 in litigation expenses. The Division's lien, however, is only $166,037.67. Therefore, urges Turnbow, the Division is entitled to nothing.

The Division moved to dismiss Turnbow's action for failing to state a claim. The district court granted the Division's motion. We affirm.

## DISCUSSION

In contrast to the common fund doctrine, NRS 422.293(5)

---

[3]We stated in *Elcano* that "[i]f the efforts of a litigant or his attorney create a common fund benefitting third persons, the [common fund] doctrine requires these passive beneficiaries to pay their fair share of litigation expenses by allowing the litigant or attorney to recover reasonable attorneys' fees from the common fund." *Elcano,* 106 Nev. at 452, 794 P.2d at 726.

Turnbow's reliance upon *Elcano* is misplaced. NRS 422.293(5) was not before us when we rendered our decision in *Elcano.* NRS 422.293(5) is, however, determinative in the resolution of the instant case.

specifically confers upon the Administrator discretion to reduce a Division lien "in consideration of the legal services provided by an attorney to procure a recovery" from which the Division will benefit.

We conclude that in the area of Division liens, the legislature has preempted the common law common fund doctrine by enacting NRS 422.293(5). *See* Holliday v. McMullen, 104 Nev. 294, 756 P.2d 1179 (1988); Life Ins. Co. of North America v. Wollett, 104 Nev. 687, 766 P.2d 893 (1988). Accordingly, NRS 422.293(5) is the only basis for reducing a lien in consideration of a party's efforts to provide a recovery benefitting the Division.

Turnbow argues that as written, NRS 422.293(5) vests unfettered discretion in the Administrator as to whether the lien will or will not be reduced and that, accordingly, the Administrator is free to abuse her discretion at will.[4] We need not address this contention, however, because even if true, we conclude that in the instant case the Administrator properly exercised her discretion by refusing to reduce the lien. Turnbow was fully compensated by a $1.4 million compensatory damage award. In addition, Turnbow secured a $1.2 million punitive damage award. Punitive damages are designed not to reward the victim but to punish the wrongdoer and deter fraudulent, malicious or oppressive conduct. Ainsworth v. Combined Ins. Co., 105 Nev. 237, 244, 774 P.2d 1003, 1009 (1989); NRS 42.005; NRS 42.010. We conclude that where the Medicaid recipient has recovered a punitive damage award, it is not an abuse of discretion to enforce a lien without reduction up to either the full amount of the lien or the full amount of the punitive damage award, whichever is less. Fairness to the taxpayers, who provided Turnbow with crucial medical care, requires that they be the first to be reimbursed following an award of punitive damages. Thus, we affirm the judgment of the district court.

---

[4]It would perhaps be helpful if the Administrator would promulgate guidelines for future application of NRS 422.293(5).