Paula A. COUGHLIN, Plaintiff,

v.

HILTON HOTELS CORPORATION, a Delaware Corporation; Las Vegas Hilton Corporation, a Nevada Corporation, Defendants.

No. CV–S–93–44–PMP (RJJ).

United States District Court,
D. Nevada.

March 8, 1995.

Nancy L. Stagg, Tracy Nation; Dennis A. Schoville, James Stiven, Gary Cary Ware & Freidenrich, San Diego, CA, Joseph I. Cronin, Minden, NV, for plaintiff.

Wait & Shaffer, Reno, NV, for defendant Eugene Wait.

Knapp, Peterson & Clarke, Glendale, CA, for defendant Gail S. Cooper–Folb.

Hilton Gaming Corp., Law Dept., Las Vegas, NV, for defendant Scott M. Mahoney.

Hilton Hotels Corp., Beverly Hills, CA, for defendant August W. Caimi.

Gibson, Dunn & Crutcher, Washington, DC, for defendants Robert Bonner, Larry Simms.

Linn & Neville, Oklahoma City, OK, for defendants James P. Linn, Bernard J. Rothbaum.

## ORDER

PRO, District Judge.

### I. INTRODUCTION

On October 28, 1994, following a trial by jury, a verdict was returned in favor of Plaintiff Paula Coughlin and against Defendants Hilton Hotels Corporation and Las Vegas Hilton Corporation ("the Hilton Defendants") for compensatory damages in the amount of $1,695,000 (## 429 and 429a). On October 31, 1994, following bifurcated proceedings mandated by Section 42.005 of the Nevada Revised Statutes, the jury returned a second verdict awarding Plaintiff Coughlin punitive damages against the Hilton Defendants in an amount totalling $5,000,000 (## 436 and 436a).

Before the Court for consideration is the issue of how the settlement amount of $400,-000 [1] paid by former Defendant Tailhook Association to Plaintiff Coughlin should be set-off with respect to the damages awarded Plaintiff Coughlin from the Hilton Defendants in accordance with the provisions of Nev.Rev.Stat. §§ 41.141 and 42.005.

On November 17, 1994, Plaintiff filed a Memorandum of Points and Authorities on Calculation of Set–Off Against Judgment (# 445). Also on November 17, 1994, the Hilton Defendants filed a Motion of Defendants to Alter or Amend the Judgment (# 441), which was filed under seal pursuant to Local Rule 130–6. On December 1, 1994, Defendants filed a Corrected Motion of Defendants to Alter or Amend the Judgment (# 460), also under seal. On December 5, 1994, Plaintiff filed an Opposition to Defendants' Motion to Alter or Amend the Judgment (# 465), to which Defendants Replied (# 462) the same date. On December 22, 1994, Defendants filed an additional Reply to Plaintiff's Opposition to Defendants' Motion to Alter or Amend the Judgment (# 475), which Plaintiff moved to strike (# 481) on January 11, 1995.[2]

---

1. At the time settlement was reached between Plaintiff and Defendant Tailhook Association, this Court entered an Order providing that the amount of the settlement would remain confidential pending further order of this Court. It was recognized by all parties at that time, however, that in the event of an award of damages in favor of Plaintiff and against the remaining Defendants, the amount of any such award would be subject to reduction.

2. The Hilton Defendants' additional Reply to Plaintiff's Opposition to Defendants' Motion to Alter or Amend the Judgment (# 475) was filed in violation of Local Rule 140–5 which permits a party to file one Reply brief per Motion. The

## II. DISCUSSION

The positions of the parties can be summarized as follows: Plaintiff Coughlin contends that under Nevada law the $400,000 settlement paid by Defendant Tailhook Association should simply be subtracted from the total Judgment of $6,695,000 entered by the jury. Under this scenario, applying Nevada's punitive damages cap as embodied in Nev.Rev. Stat. § 42.005, the compensatory damages of $1,695,000 would be multiplied three times giving a punitive damages limit of $5,085,000. The jury's assessment of $5,000,000 in punitive damages, therefore, would not have to be reduced because it would already be under the cap. Thus, according to Plaintiff, after deducting the $400,000 settlement from the total of $6,695,000, total damages ultimately awarded to Plaintiff would be $6,295,000.

The Hilton Defendants, on the other hand, contend that the $400,000 settlement should be subtracted from compensatory damages prior to applying Nevada's punitive damages cap. The result of this interpretation is that the $400,000 settlement would be subtracted from the compensatory damages in the amount of $1,695,000, making the total award for compensatory damages $1,295,000. Thus, three times that amount, or $3,885,000, would be the maximum amount of punitive damages to which Plaintiff would be entitled according to Nev.Rev.Stat. § 42.005, making the maximum amount of total damages Plaintiff Coughlin could be awarded $5,180,000.

■ As far as this Court can discern, and the parties apparently agree with this assessment, the issue presently before the Court is one of first impression in this state. Naturally, as jurisdiction is invoked upon diversity of citizenship, this Court is bound to apply the substantive law of the state in which it sits. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938);

*Strassberg v. New England Mutual Life Ins. Co.,* 575 F.2d 1262 (9th Cir.1978). Thus, Nevada law controls. Where there is an absence of controlling Nevada law, however, the Court must use its best judgment in predicting how the Nevada Supreme Court would decide the substantive issue. *See Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir.1986), *modified,* 810 F.2d 1517 (1987); *Takahashi v. Loomis Armored Car Service,* 625 F.2d 314, 316 (9th Cir.1980). In performing this function, the Court may be aided by reviewing well-reasoned decisions from other jurisdictions. *Takahashi,* 625 F.2d at 316.

From the opposing positions of the parties, it is readily apparent that this Court's interpretation of the relevant Nevada statutes may significantly impact the damages Plaintiff Coughlin may be entitled to receive from the Hilton Defendants. The Court, therefore, now turns to an examination of the law of negligence in Nevada, and the impact of Nevada's statutory punitive damages cap thereon.

### A. *Nevada's Comparative Negligence Statute*

■ Nev.Rev.Stat. § 41.141, Nevada's comparative negligence statute, states the following with regard to treatment of settlements in multiple defendant cases: [3]

> If a defendant in ... an action [in which comparative negligence is asserted as a defense] settles with the plaintiff before the entry of judgment, the comparative negligence of that defendant and the amount of the settlement must not thereafter be admitted into evidence nor considered by the jury. *The judge shall deduct the amount of the settlement from the net sum otherwise recoverable by the plaintiff*

Court will therefore grant Plaintiff's Motion to Strike (# 481).

3. The parties direct a great many of their arguments toward Nev.Rev.Stat. § 17.245. The Court, however, finds that § 41.141 rather than § 17.245 applies because Plaintiff Coughlin's own negligence was an issue at trial. *See Buck v. Greyhound Lines, Inc.,* 105 Nev. 756, 783 P.2d 437, 442 (1989) (Nev.Rev.Stat. § 41.141 "must

be read as applying to situations where a plaintiff's contributory negligence may be properly asserted as a bona fide issue in the case"). In any event, as the following discussion will demonstrate, the question before the Court will turn upon the Court's interpretation of Nevada's punitive damages statute. Accordingly, the Court finds that the result in this case would be the same even if § 17.245 were applicable.

*pursuant to the general and special verdicts.*

Nev.Rev.Stat. § 41.141(3) (emphasis added).

██ Thus, according to the comparative negligence statute, the amount of Tailhook's settlement in this case is to be "deduct[ed] from the net sum otherwise recoverable by the plaintiff pursuant to the general and special verdicts." The subsection immediately preceding the one quoted above, states that in a case where comparative negligence is asserted as a defense, the judge shall instruct the jury that:

(a) The plaintiff may not recover if his comparative negligence or that of his decedent is greater than the negligence of the defendant or the combined negligence of multiple defendants.

(b) If the jury determines the plaintiff is entitled to recover, it shall return:

(1) By general verdict the total amount of damages the plaintiff would be entitled to recover without regard to his comparative negligence; and

(2) A special verdict indicating the percentage of negligence attributable to each party remaining in the action.

Nev.Rev.Stat. § 41.141(2).

Therefore, according to the plain language on the face of the statute, "the net sum otherwise recoverable by the plaintiff pursuant to the general and special verdicts", appears to the Court to refer to the net sum otherwise recoverable by the plaintiff pursuant to the general verdict as to the total amount of compensatory damages as assessed by the trier of fact, and the special verdict indicating the percentage of negligence attributable to each party remaining in the action.[4]

In its verdict returned October 28, 1994, the jury determined the that Plaintiff Coughlin was entitled to compensatory damages of $1,695,000 and that Plaintiff Coughlin was zero percent negligent. Therefore, the net sum otherwise recoverable by Plaintiff Coughlin pursuant to the general and special

verdicts is $1,695,000. Accordingly, after deducting the $400,000 settlement from this amount pursuant to Nev.Rev.Stat. § 41.141(3), Plaintiff Coughlin is entitled to receive $1,295,000 from the Hilton Defendants in compensatory damages. Had Plaintiff Coughlin only brought claims for compensatory damages or the jury determined that the Hilton Defendants had not acted with malice, fraud or oppression, this figure would constitute the full amount Plaintiff Coughlin would be entitled to recover from the Hilton Defendants in this action. On October 31, 1994, however, the jury returned a verdict on punitive damages in Plaintiff Coughlin's favor in an amount totalling $5,000,000. Thus, the Court must consider the impact of Section 42.005—Nevada's punitive damages statute— upon this verdict.

### B. *Nevada's Punitive Damages Statute*

██ Before immediately discussing Section 42.005 itself, the Court notes that the Nevada Supreme Court has established a few general principles regarding punitive damages. For instance, punitive damages are not designed to compensate the victim of a tortious act but rather to punish and deter oppressive, fraudulent or malicious conduct. *Turnbow v. Department of Human Resources,* 109 Nev. 493, 853 P.2d 97, 99 (1993); *Siggelkow v. Phoenix Insurance Co.,* 109 Nev. 42, 846 P.2d 303, 304 (1993); *Ace Truck and Equip. Rental, Inc. v. Kahn,* 103 Nev. 503, 746 P.2d 132, 134 (1987). Furthermore, "[p]unitive damages are not awarded as a matter of right to an injured litigant, but are awarded in addition to compensatory damages as a means of punishing the tortfeasor and deterring the tortfeasor and others from engaging in similar conduct." *Siggelkow,* 846 P.2d at 304–305. The underlying purpose of a punitive damage award is grounded in "public policy concerns unrelated to the compensatory entitlements of the injured party." *Id.* at 305 (citing *Kahn,* 746 P.2d at 134). These same principles prompted the Nevada Supreme Court in *Siggelkow* to reaffirm its

---

4. The Court finds that the meaning of "the net sum otherwise recoverable by the plaintiff pursuant to the general and special verdicts" can be discerned by the plain language on the face of

the statute. *See Cleghorn v. Hess,* 109 Nev. 544, 853 P.2d 1260, 1262 (1993) ("When the language of the statute is clear on its face, its intention must be deduced from such language").

language in *Kahn* regarding punitive damages. As the court explained:

> Punitive damages provide a means by which the community, usually through a jury, can express community outrage or distaste for the misconduct of an oppressive, fraudulent or malicious defendant and by which others may be deterred and warned that such conduct will not be tolerated. The allowance of punitive damages also provides a benefit to society by punishing undesirable conduct that is not punishable by the criminal law.

846 P.2d at 305 (quoting *Kahn,* 746 P.2d at 134).

In Nevada, punitive damages are authorized by statute, specifically Nev.Rev.Stat. § 42.005. The statute, however, also places a ceiling on the amount of punitive damages a plaintiff may be awarded. As Section 42.005 states in relevant part:

> Except as otherwise provided in this section or by specific statute, and award of exemplary or punitive damages made pursuant to this section may not exceed:
>
> (a) Three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more.

Nev.Rev.Stat. § 42.005(1)(a).

The Hilton Defendants contend that the statutory limitation of punitive damages to "[t]hree times the amount of compensatory damages awarded" refers to compensatory damages after the reduction is made for Tailhook's settlement. Plaintiff Coughlin, on the other hand, asserts that this language refers to the prereduction compensatory damages. For the reasons that follow, the Court finds that after a reasonable interpretation of Nevada's punitive damages statute in light of Nevada public policy, the Nevada Supreme Court would hold that the language "compensatory damages awarded" in the punitive damages statute refers to the reduced compensatory damages award Plaintiff Coughlin is to receive according to Nevada's comparative negligence statute.

The Nevada courts have long held that a statute should be given its plain meaning, *Alsenz v. Clark County School Dist.,* 109 Nev. 1062, 864 P.2d 285, 286 (1993), and legislative intent is "the controlling factor in statutory interpretation." *Department of Motor Vehicles v. McGuire,* 108 Nev. 182, 827 P.2d 821, 822 (1992). Accordingly, "[w]hen the language of the statute is clear on its face, its intention must be deduced from such language." *Cleghorn v. Hess,* 109 Nev. 544, 853 P.2d 1260, 1262 (1993). Obviously, "statutory interpretation should avoid absurd or unreasonable results." *Alsenz,* 864 P.2d at 286.

As noted, the Nevada Supreme Court has yet to directly address the meaning of the statutory language in question. In *Lira v. Davis,* 832 P.2d 240 (Colo.1992), however, the Colorado Supreme Court was faced with an issue similar to the one before this Court. In *Lira,* the court was asked to determine whether the language "the amount of actual damages awarded" contained in Colorado's exemplary damages statute referred to the compensatory damages figure prior to or after the judicial adjustment for comparative negligence and pro rata liability according to Colorado's versions of those statutes.

In holding that "the amount of actual damages awarded" referred to the post-reduction compensatory damages, the court primarily focused upon the language of Colorado's exemplary damages statute. The court found that "by referring to compensatory damages within the same provision first as "damages assessed" and then as "damages awarded" [the Colorado legislature] intended that different meanings attach to these two terms." *Lira,* 832 P.2d at 245. The court then concluded that the common, ordinary meaning of the terms "assessed" and "awarded" indicated that "the reference to damages assessed is synonymous with the pre-reduction compensatory amount and the reference to damages awarded equates to the reduced compensatory amount." *Id.*

Similarly, Nevada's punitive damages statute makes reference to damages "assessed" and "awarded", but in a somewhat different manner than the Colorado statute. In placing a cap upon punitive damages, the Nevada statute begins *"an award* of exemplary or punitive damages made pursuant to this section may not exceed...."* Nev.Rev.Stat.

§ 42.005(1) (emphasis added). Later in the same statute, the Nevada legislature provided as follows:

> If punitive damages are claimed pursuant to this section, the trier of fact shall make a finding of whether such damages *will be assessed.* If such damages are *to be assessed,* a subsequent proceeding must be conducted before the same trier of fact to determine the amount of damages *to be assessed.* The trier of fact shall make finding of the amount *to be assessed* according to the provisions of this section. The findings required by this section, if made by a jury, must be made by special verdict along with any other required findings. The jury must not be instructed, or otherwise advised, of the limitations on the amount of an award of punitive damages prescribed in subsection 1.

Nev.Rev.Stat. § 42.005(3) (emphasis added).

Thus, Nevada's punitive damages statute distinguishes between the ultimate punitive damages "award" which may not exceed certain limits according to subsection 1, and punitive damages "assessed" by the jury prior to imposition of the cap. From this distinction, it appears that the Nevada legislature contemplated that the term "award" in the punitive damages statute, refers to the punitive damages figure after application of the cap. Thus, like the statute at issue in *Lira,* it appears that the Nevada legislature contemplated that the two words would have different meanings. As the *Lira* court noted, when given its common meaning, "award" means "to determine after careful consideration" and "to give by judicial decree" or "assign after careful judgment." *Lira,* 832 P.2d at 245 (quoting *Webster's Third New International Dictionary of the English Language, Unabridged* 152 (1986). *See also Black's Law Dictionary* 137 (6th ed. 1990) (to award is "[t]o grant, concede or adjudge to," or "[t]o give or assign by . . . judicial determination. . . .")).[5] Consistent with this interpretation then is the conclusion that the term

"awarded" following "compensatory damages" in the punitive damages statute should be given the same meaning as "award of exemplary or punitive damages", and thus it should refer to the reduced compensatory damages award Coughlin is to receive according to Nevada's comparative negligence statute. To interpret "awarded" otherwise would be to attribute two different meanings to the same word in the same statute without any basis for such a construction.

▮ At least one other jurisdiction in addition to Colorado has reached the same result in an analogous context. In *Tucker v. Marcus,* 142 Wis.2d 425, 418 N.W.2d 818 (1988), the Wisconsin Supreme Court held that where Wisconsin's contributory negligence statute barred recovery of compensatory damages because the plaintiff was found to be seventy percent negligent, punitive damages were not available where there had been no "award" of compensatory damages. *Id.* 418 N.W.2d at 823.[6] In so holding, the court noted:

> [T]he jury's finding that there had been injury suffered, and ascertainment of a sum which would fairly compensate the respondent for the injury suffered, did not constitute an "award" of actual damages. *An "award" represents a remedy recoverable in accordance with an order for judgment.* It is not enough that actual damages may have been "suffered" or "sustained" in order for punitive damages to be awarded.

*Id.* (emphasis added).

The Court's ruling on this issue is also consistent with the Nevada Legislature's intent in enacting Assembly Bill No. 307, which amended Nev.Rev.Stat. § 42.005 in 1989. It is clear that in amending the punitive damages statute and imposing the cap, the Nevada Legislature intended to rein in excessive punitive damages awards. This was accomplished by mandating that punitive damages

---

**5.** The Colorado Supreme Court defined "assess" as "to determine the rate or amount of" and, as an example of word usage, includes "assess damages after an accident." *Lira,* 832 P.2d at 245 (quoting *Webster's* at 131. *See also Black's Law Dictionary* at 116 (primarily defining "assess" as

"[t]o ascertain; fix the value of. To fix the amount of damages. . . .")).

**6.** Nevada follows the same rule. *See City of Reno v. Silver State Flying Service, Inc.,* 84 Nev. 170, 438 P.2d 257 (1968).

are not to exceed an amount that is three times what a court uses as a measure of the harm done to a plaintiff—namely, compensatory damages. The Court's ruling today effectuates this goal.

Finally, Plaintiff Coughlin argues that this Court's interpretation of the statute will discourage settlements and lead to a windfall for the Hilton Defendants. The Court disagrees. It does not necessarily follow that the Court's ruling discourages settlements. Rather, what will hopefully follow is that parties in suits claiming punitive damages where comparative negligence is an issue will be forced to evaluate the merits of their case in light of this Court's ruling, as parties routinely do when other judicial decisions arise clarifying the law in a particular area. As for the argument that the Hilton Defendant's receive a windfall, Plaintiff Coughlin fails to consider that a plaintiff has no vested right to punitive damages in the first place. Presumably, a plaintiff has already been made whole through an award of compensatory damages, and punitive damages by definition provide a punishment to a defendant and a windfall to the plaintiff. Limiting a windfall to a plaintiff can hardly be equated with providing one for the defendant.

## III. CONCLUSION

This Court is cognizant of the fact that its interpretation of Nevada's punitive damages statute results in a significant reduction in the amount of punitive damages Plaintiff Coughlin may receive. It must be remembered, however, that inasmuch as the law is able to make a plaintiff whole, Coughlin has been fully compensated for the injuries that resulted from Defendants' negligence through the jury's award of compensatory damages and the settlement with the Tailhook Association. Furthermore, although pursuant to the jury's findings the Hilton Defendants are to be punished for their actions through the imposition of punitive damages, it would be improper for this Court to allow such punitive damages to exceed the statutory limit the people of the State of Nevada have seen fit to establish.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Strike (# 481) is Granted.

IT IS FURTHER ORDERED THAT Plaintiff's Memorandum of Points and Authorities on Calculation of Set–Off Against Judgment (# 445) is Denied.

IT IS FURTHER ORDERED THAT Defendants' Motions to Alter or Amend the Judgment (## 441 and 460) are Granted to the extent that pursuant to Nev.Rev.Stat. § 41.141(3) the jury's assessment of compensatory damages in the amount of $1,695,000 in favor of Plaintiff Paula Coughlin and against Defendants Hilton Hotels Corporation and Las Vegas Hilton Corporation shall be reduced to $1,295,000 to reflect the amount of $400,000 Plaintiff Coughlin received in settlement from former Defendant Tailhook Association, and that pursuant to Nev.Rev.Stat. § 42.005(1)(a) the jury's assessment of punitive damages in the amount of $5,000,000 in favor of Plaintiff Paula Coughlin and against Defendants Hilton Hotels Corporation and Las Vegas Hilton Corporation shall be reduced to $3,885,000 to reflect the imposition of Nevada's punitive damages cap.